Mr. Justice WOODBURY
 

 delivered, the. opinion of the court.
 

 This was a writ of error to reverse a judgment in the Circuit Court for the Southern District of New York. That judgment was rendered in favor of Allen et al., the original plaintiffs, in a suit to recover back the. amount of duties which Lawrence, the defendant, as collector of the port of New York, had demanded and received on the importation of certain boxes of India-rubber shoes, in September, A. D. 1845, and which the importers claimed to be by law free. The duties were,, therefore, paid under protest; and at the trial, the court, among other things, ruled, that, on the facts proved, these shoes were not, in point of law, subject to any duty; and, consequently, a verdict was returned for the plaintiffs below for the amount which had been paid to the collector, and interest.
 

 The facts proved or admitted, which appear material, were, that these shoes consisted wholly of India-rubber, and in different sizes, suited for men, women, and children; that no other work had been expended on them except to dip the. moulds or lasts into the milky íiquid, as procured from the India-rubber trees, and then dry them over a fire, -^performing this process several times, till a proper thickness was obtained. A small ornament was afterwards drawn on some of them, and a coarse stuffing inserted in others, and in this conditibn they had for many years been imported, and worn without any.essential change or addition here, unless in sqme instances slightly to trim' and stretch > them on a last. It was also proved that shoes, made in part from India-rubber and in part from cloth or 'leather, of a thinner and lighter fabric, had been- sometimes, imported from Europe, and-for several years had been extensively manufactured in this country.
 

 
 *791
 
 The law which governs the question whether these shoes ought, to pay a duty of thirty per cent,
 
 ad valorem,
 
 or be admitted free, is the act of Congress of August 30, 1842 (5 Stat. at Large, 555). In its fifth section, thirty per cent, is imposed “ on India-rubber oil-cloth, webbing,
 
 shoes,
 
 braces or suspenders, or other fabrics or manufactured, articles, composed wholly or in part of India-rubber.” And in the ninth.section, among other articles declared to be “ exempt from duty,” is “
 
 India-rubber, in bottles or sheets, or otherwise unmanufactured.”
 

 The court below entertained an opinion, that the clause in this law imposing a duty of thirty per cent, on India-rubber shoes referred to those made in a finished state from that
 
 material,
 
 after , being altered in Brazil from its liquid condition to the more solid state, and to the forms of sheets, shoes, bottles, &c:, and that this alteration was not a manufacturé, though into a shape designed for use without any material change, and hence, that shoes so miáde arid imported were not dutiable-. This view was, undoubtedly, correct to a certain extent, and in some aspects of the
 
 subject;
 
 but in others it seems to us to' involve some errors, which we think ought- to be corrected, and which require more extended explanations because overruling the judgment below. Thus, although this act of Congress clearly meant to impose a duty of thirty per cent, on shoes imported, which had been made in part from India-rubber after it had been hardened and fashioned into some crude shape in South America, yet we have no doubt it might likewise intend to impose this duty on shoes' made abroad wholly from India-rubber while in its liquid staip, and especially if, when so made, such shoes were in a condition to be worn without further material labor on them.here, and were made to be so worn, and were in this form often actually worn.
 

 It is our opinion, therefore,
 
 that the
 
 jury should have been so • instructed; and if they were satisfied those shoes had been thus made to be so worn, and, in the language of commerce, if such shoes were called “ India-rubber shoes,” no less than those made here or in Europe in part from India-rubber and in a more finished form, that the duty of thirty per cent, ought to have been paid on them.
 

 Some of our reasons for this opinion are briefly these.
 

 The articles imported in this case manifestly come within the letter of the clause imposing a duty of thirty per cent, on “ India-rubber shoes.” They are “ India-rubber shoes.” Being thus provided for as shoes, the subsequent clause, making certain articles free which were unmanufactured, artd not enumerating shoes among them, cannot be presumed to embrace or refer to any thing already provided for. United States
 
 v.
 
 Clarke, 5
 
 *792
 
 Mason, C. C. 30. Indeed, these shoes were more emphatically India-rubber shoes, than those made only in part of that material, as are most, if not all, of those manufactured in.this country and in Europe. Again, to remove difficulty in many cases whether an article should come under the description of those liable to duty, there it is added, in the first clause, taxing them,. manufactured articles -composed wholly or, in part of India-rubber ” ; ánd, in this way, the duty extends to any shoes,, if a manufactured article^ whether they'be like these, composed wholly of India-rubber, or, like most others, composed only in part of it.
 

 • Much more do the shoes in this case appear to come within this provision in the act of Congress imposing the duty of thirty per cent;, when’ we examine the spirit and object of that provision. To ascertain these with some degree of certainty, it may be useful, in the first place, to advert a moment, to the past, as well as subsequent, legislation of Congress on this subject.
 

 The import of India-rubber, in any form, into- this country, does not appear to have attracted attention in the revenue laws, as a' separate and specific article* till 1832. Before that,
 
 and
 
 especially in the tariff acts of 1828, 1824, and 1816, all of which are usually conceded to have looked to protection as well as revenue, India-rubber is not enumerated
 
 eo nomine
 
 as free or dutiable, and hence was taxed generally, from twelve and a half to fifteen per cent., among the non-eniimerated articles (3 Stat. at Large, 310; 4 Stat. at Large, 29 and 590). But in 1832, when the policy had become changed to reduce an overflowing revenue, by leaving frqe such unmanufactured articles as furnished raw materials to our own manufacturers, and such manufactured articles as did not compete with any made here, the act of July 14th, 1832, § 3, exempted from duty entirely “ India-rubber
 
 ”
 
 (4 Stat. at Large, 590). In 1833, a like policy, for a like reason, was pursued, and so in 1841, by expressions in the former period placing
 
 “
 
 India-rubber ” among the articles free from duty (4 Stat. at. Large, 630), and in the. latter, making “India-rubber” still excepted from duty, though several articles before free were then taxed (5 Stat. at Large, 463).
 

 But in 1842, when the policy of the government again became adapted to protection no less than revenue, the act now under consideration was. shaped so as to tax whatever might compete with'our own manufacturers, and to admit free only articles in such shape; esc. 4orm' as were .not calculated to rival our own. Now beiorh
 
 18'&,
 
 it is well known that the making of shoes in part from India^r-fibber, so as to be water-proof, had .been invented, patented, and extensively practised in this country. Consequently, -such a protective tariff as that introduced in
 
 *793
 
 1842 would be likely to tax any foreign fabric which was, in any considerable degree, a rival to the article made here for a Similar use. And, consequently, a foreign-made shoe, whether “ composed wholly or in part of India-rubber,” was meant to be taxed thirty peí cent., if, in either case, it was in a form-suited- tp be used as water-proof, was so designed and so used, and this form would rival the shoe made here for a like purpose.
 

 In construing statutes, it. is not only our duty to give eifect to all the words used in their ordinary sense, but to eviscerate, if possible, their true spirit and intent from - all the connected circumstancés, attendant or subsequent as well as preceding. Bond
 
 v.
 
 Hoyt, 13 Pet. 273; 1 Kent’s Com. 461.
 

 The statute applicable directly tp the present case being, in some respects, awkwardly worded, the design of it on this subject has been made more explicit and clear by the subsequent act of July 30th, 1846, changing the forms of expression to describe the articles intended to be taxed. Thus, it is there provided, that a duty of thirty per cent, be imposed on “ braces, suspenders, webbing, or other fabrics composed wholly or in part of India-rubber, not otherwise provided for.” And, to prevent -any misconception of the intention, it is added, under the same schedule and .rate of duty, “ shoes composed wholly of India-rubber.”
 

 It would also be very extraordinary if the spirit of the act of 1842, in its high protective policy, should not mean to tax the foreign India-rubber shoe made wholly of India-rubber, when it was, and still is, a most formidable and successful rival to the shoe made here in part of the same substance; when it was at first, and for many years, the only shoe used here as waterproof ; and when, under all patents and improvements since in lightness and beauty, hone seem able to surpass it now in durability, ease, and economy combined.
 

 But it is contended that the India-rubber shoe, as made in Brazil and imported thence, is not a
 
 “
 
 manufactured article,”' and hence is not within the clause in the act of 1842 imposing a duty of thirty per cent. - It may be conceded that this duty applies only to such an article. Yet what constitutes a manufactured article ?
 

 In some instances, and for some purposes, it may be one kind of process performed on what is found in a natural state, and in some, another kind. Thus the juice of the. maple or of the-cane is in some views manufactured when it is made into molasses or syrup, and in others, when again made into sugar or spirit from molasses. And so the juice of the grape is in one sense manufactured when converted into wine,- and in another,
 
 *794
 
 ■when made into brandy. And so is lye from ashes, when boiled down to potash or pearlash, manufactured into them. Here, the juice or sap of the India-rubber tree, while liquid or in its milky state, whether then called caoutchouc or some other name, is still,a natural substance, and in its natural form; and, in one sense and to a certain extent, its being hardened and changed in color, no less than consistency -and bulk, by fire and evaporation, whatever-.new form it may then be turned' into, is a manufacture; It .is. so as much as butter or cheese. is a manufacture from animal milk, or tar from turpentine, and rosin from tar-. Yet from the words of the law, as well as its design, it is manifest that the India-rubber is not meant to be taxed as a mahufacture, though so hardened and,changed, unless, at the same time, it is put into a shape which is suitable for use, and adapted with a design; to be used in a way .that is calculated to rival some domestic manufacture he_re, rather than merely to furnish a raw material in a more portable, useful, and convenient form for other manufactures here. In the latter case, within the policy ahd purpose of the tariff law yielding protection, it is “unmanufactured,” or, in other words, not made abroad for use in its existing form except as a raw material, like pig-iron or pig-lead. But in the former case, within that policy and purpose, it is “ manufactured,” as it is made in a shape for use as a manufacture without being afterwards materially changed in form, and is designed to be so used, and hence comes in as a competitor with our own manufactures.
 

 After these, what'requisite is wanting to bring it within the spirit, no less than the letter, of the provision imposing a duty ? It has been changed, by fire and labor, in its color, consistency, and form, from its natural state as the milk of the India-rubber tree. It has been fashioned into an article of clothing, suitable and customary to be worn in its then shape. It is a rival to other shoes made here.
 

 These elements would, on principles of common sense, seem to amount to a manufacture, and one, when imported .from abroad, likely-to be taxed.
 

 Going.to more technical definitions and. to-first principles, such a process to make the - shoe is making ati article by the hand, which was once thé literal meaning of .the word
 
 manufacture,
 
 or
 
 manu factum,
 
 and in the more modern idea attached to the word, it is making an article, either by hand or machinery, into a new form, capable of being used, and designed to be used, in-ordinary life..
 

 Indeed, these India-rubber’shoes were originally made, in «Brazil, not as a form .of sending abroad a raw material to be used for other purposes. But they wpre prepared as a shoe, to
 
 *795
 
 be worn in the shape as there finished, ánd for the purpose of-excluding water.. Travellers in Brazil described the usé of India-rubber there first, in the form of boots, because water-proof. 1 McCulloch’s Diet.
 
 311;
 
 Ure’s Diet.
 

 The shoe succeeded to the boot, and its export in sheets also, to be cut up. to rub out pencil-marks,v&c., gave to the substance itself the common name of India-rubber. Ibid.
 

 In the form of the shoe, therefore, to be worn in Brazil or elsewhere, because water-proof, it was a manufacture, and one of such value for that purpose as to lead. to a greatly increased expobt of the article in that shape within the. last twenty years.
 

 And as the invention was made, here and abroad, of thinner and lighter shoes manufactured in part from it,- and of extending the use of India-rubber to many hew' objects in dress and the arts, the demand for it, in a state ás hardened and colored, without regard to form, enlarged rapidly.
 

 Considering, too, that a* mode of dissolving it here has been discovered, and of easily, giving to it, afterwards, any desired shape, it may be that shoes, no less fhari sheets or. slabs of India-rubber, in a hardened form, become often, when con-veniént, melted down or dissolved, to be used for other purposes. This might often be done with them, though a manufacture, as their value per pound would vary but little, if any, from India-rubber in'the shape of sheets, as the raw material of ■which they were manufactured was the same, and as the expense of making them is similar,. — one being done by several dippings, like a candle, and the other by several layers of the gum or milk.
 

 But this occasional use of the shoes for other purposes than wearing as water-proof shoes would not alter their original character as a manufacture for- the latter purpose, nor the importation and present character of them; as a manufacture for the same purpose.
 

 Thusj the importation of cast-iron in kettles or handirons in a state to be so used, and frequently so used, would not be altered, as a manufacture .of that kind, and as subject to pay the duty imposed on it in ithe tariff; because some of it, after imported, might occasionally be melted down and recast, artd used for other or similar purposes.
 

 Nor is the juice of the cane — converted into a different consistence and color abroad, and shipped here as molasses, ready to be used, and often used as such — any the less a- “ manufactured' article,” and any less subject to the duty on molasses, because some of it, after arriving in this country, may again be manufactured into sugar or spirit.
 

 
 *796
 
 A further illustration as to the distinction between the same article, put- into a shape to be sold for use as it is, and into on,e not for use as it is, is that of melted iron.
 

 In that state it may be run in moulds, either for pots or for pigs, and, in the former' case, fitted and sold to be used in that shape, and hence a manufácture; while, in the latter, sold to be made up afterwards into new and different forms, and hence, for some purposes, is then not regarded as a manufacture till so made up.
 

 So lead may be melted into the shape of pigs or bars, for exportation and for foreign manufacture, or be run into weights, for use as weights, and then be regarded as already a manufacture for that purpose.
 

 It is another evidence that shoes composed wholly of India-'rubber were considered by Congress as a manufactured arti- . cle, that they place them in that category in the. tariff with other, clearly manufactured articles, while they place in the category of those unmanufactured such articles as are not in a shape to be used much, if at all, without being made up into new forms. Thus it is with the India-rubber images of alligators and- lizards imported. If bottles are' an exception, they are specially enumerated in the tariff among the free articles, in order to be free, while shoes are not; and the former are so enumerated, because usually made up here into new shapes, for other purposes, before used; and when not so made up, are little employed in their original shape, and have no rival manufacture to be protected by taxing them. Had Congress intended that shoes, when wholly of India-rubber, should be considered as unmanufactured, and be free, it is difficult to conceive why it did not place them in that list, and declare them unmanufac-tured and free, rather than in -the list of manufactured and dutiable articles, as it did both in -1842 and again in the revised act of 1846.
 

 Finally, another circumstance exists, which appears to be a decisive indication that this very importation of shoes, though called in the invoice “unmanufactured,” was meant mainly as shoes for use, to be worn in their existing condition, rather than to be dissolved and used for other purposes. It is, that several of the boxes wete invoiced as shoes for “ ladies,” and others ..for misses,” ..or children, and which different forms or shapes would be useless, as well as more, expensive, if the shoes were intended merely to be cut up or-dissolved for other uses, áad not to be worn by different sexes arid ages, as “ manufactured ” shoes in their present shape.
 

 In several analogous cases, as to teas, -cotton bagging, and sugar, this court has held, that it is a proper fact for the jury to
 
 *797
 
 decide, whether the importéd article is or is not known in commerce by the words or terms used in the tariff imposing the duty, and not a question of law, to be settled by. the court, as was' done here. United States
 
 v.
 
 112 Casks of Sugar, 8 Peters, 277; Elliott
 
 v.
 
 Swartwout, 10 Peters, 151, 153; United States
 
 v.
 
 Breed, 1 Sumner, 164; 9 Wheaton, 438; Curtis
 
 v.
 
 Martin, 3 Howard, 106.
 

 Unless it be admitted in this case, then, as most of the testimony proves, that these shoes were known in a commercial sense and use as India-rubber shoes, — no less, than others, made in part from it, — we think the jury should return a verdict on that fact; and next, that the jury should have been further instructed, that, if these shoes had been made into their present shape in order to be worn as water-proof, when the purchasers pleased, and that it wás .customary so to wear them, they were withiri the meaning of the act of Congress on this subject, “manufactured,” and liable to pay a duty of thirty per cent.
 

 Without going into other questions raised at the trial, and without dwelling longer on this, our opinion is, that the judgment below must be.reversed, and a
 
 venire de novó
 
 awarded; and the new trial be governed by the principles; here settled.
 

 Order.
 

 This cause came on to be heard on the transcript of the record .from the Circuit Court of the United States for the. Southern District of New York, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court of the United States for the Southern District of New York in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with instructions to award a
 
 venire facias de novo,
 
 and that the new trial shall be conducted in conformity. to the principles laid down in the opinion of this court.