**WALLING v. ARMBRUSTER et al.**
**Civ. No. 345.**

District Court, W. D. Arkansas,
Fort Smith Division.

Aug. 10, 1943.

Douglas B. Maggs, Solicitor, Department of Labor, Irving J. Levy, Associate Solicitor, Department of Labor, of New York City, and Llewellyn B. Duke, Regional Atty., Department of Labor, and Harry Campbell, Jr., Associate Atty., Department of Labor, both of Dallas, Tex., for plaintiff.

Hugh M. Bland, of Fort Smith, Ark., for defendants.

MILLER, District Judge.

Able counsel for the parties have filed most excellent briefs in support of their contentions. Counsel for plaintiff state the issues as follows:

(1) Whether the defendants are engaged in the production of goods for interstate commerce within the meaning of the Act.

(2) Whether the defendants are operating a service establishment within the exemption granted by Section 13(a) (2) of the Act.

These questions will be discussed in the order stated.

(1) In Kirschbaum Co. v. Walling, Administrator of the Wage and Hour Division, United States Department of Labor, 316 U.S. 517, 524, 62 S.Ct. 1116, 1120, 86 L.Ed. 1638, the court said: "But the provisions of the Act expressly make its application dependent upon the character of the employees' activities. And, in any event, to the extent that his employees are 'engaged in commerce or in the production of goods for commerce', the employer is himself so engaged."

In Fleming, Administrator of the Wage and Hour Division, United States Department of Labor, v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, 570, the court said: "We conclude that it was the intention

168

of Congress to make the act applicable to all those who are employed in commerce or in the production of goods in commerce without regard to the nature of their employer's business and that this intention was given apt expression in Sections 6 and 7 of the act."

The term "goods" is defined in Section 3(i) of the Act, U.S.C.A. Title 29, Section 203(i) and the term "produced" is defined in Section 3(j) of the Act, U.S.C.A. Title 29, Section 203(j).

■■ The statutory definition of these terms are sufficiently broad to include the converted automobiles and there is no doubt that the finished buses were goods produced for commerce.

In the case of United States v. Darby, 312 U.S. 100, 118, 657, 61 S.Ct. 451, 459, 85 L.Ed. 609, 132 A.L.R. 1430, in which the constitutionality of the Act was sustained, it is said: "The recognized need of drafting a workable statute and the well known circumstances in which it was to be applied are persuasive of the conclusion, which the legislative history supports, S. Rept. No. 884, 75th Cong. 1st Sess., pp. 7 and 8; H. Rept. No. 2738; 75th Cong. 3rd Sess., p. 17, that the 'production for commerce' intended includes at least production of goods, which, at the time of production, the employer, according to the normal course of his business, intends or expects to move in interstate commerce although, through the exigencies of the business, all of the goods may not thereafter actually enter interstate commerce."

■ The facts disclose that the employees of defendants were engaged in work necessary to the production of goods (buses) in Arkansas. At the time such work was being done the defendants knew that the goods (buses) were destined to move in interstate commerce to the state where they were to be used. In such operations the defendants were and are subject to the provisions of the Act, unless exempted therefrom by Section 13(a) (2), U.S.C.A. Title 29, Section 213 (a) (2). See Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897; Warren-Bradshaw Drilling Co. v. Hall, Agent, et al., 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. ——.

(2) Were and are the defendants operating a service establishment within the exemption granted by Section 13(a) (2) of the Act?

The section reads: "The provisions of sections 206 and 207 of this title shall not apply with respect to * * * any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." U.S.C.A. Title 29, Section 213(a) (2).

The Circuit Court of Appeals for the Eighth Circuit in its opinion in the case of Musteen et al. v. Johnson et al., 8 Cir., 133 F.2d 106, 108, after referring to the cases of A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Overnight Motor Transp. Co., Inc., v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. ——; and Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. ——, said: "These decisions indicate that the Fair Labor Standards Act must be liberally construed to include all employees (not expressly excepted from the Act) who reasonably may be deemed to be within its purview."

The plaintiff contends that the conversion of automobiles into buses is manufacturing and that the business as operated by defendants is not a service establishment.

The defendants on their brief state: "If the defendants were manufacturing buses from the ground up and selling them to customers at their place of business, knowing that they were to take them into other states, then the defendants would be covered by the Act, but, in the case at bar, we have a pure service establishment rendering a service to owners of automobiles desiring that they be converted into buses."

Learned counsel for defendants has displayed great industry in the preparation of the brief for defendants, but most of the cases cited and relied upon arose under the various tariff and taxing statutes. The same is true of most of the cases cited by able counsel for the plaintiff. None of the cited cases seem to be decisive of the question and the court in its investigation of the precedents has not found any case that fully determines the question. The Supreme Court of the United States, speaking through Mr. Justice Blatchford in the case of Hartranft v. Wiegmann, 121 U.S. 609, 615, 616, 7 S.Ct. 1240, 1243, 30 L.Ed. 1012, said: "We are of opinion that the shells in question here were not manufactured, and were not manufactures of shells, within the sense of the statute imposing a duty

of 35 per centum upon such manufactures, but were shells not manufactured, and fell under that designation in the free list. They were still shells. They had not been manufactured into a new and different article, having a distinctive name, character, or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws. Washing and scouring wool does not make the resulting wool a manufacture of wool. Cleaning and ginning cotton does not make the resulting cotton a manufacture of cotton. In Schedule M of section 2504 of the Revised Statutes (p. 475, 2d Ed.) a duty of 30 percent. ad valorem is imposed on 'coral, cut or manufactured;' and in section 2505 (p. 484) 'coral, marine, unmanufactured,' is made exempt from duty. These provisions clearly imply that, but for the special provision imposing the duty on cut coral, it would not be regarded as a manufactured article, although labor was employed in cutting it. In Frazee v. Moffitt [18 F. 584], 20 Blatchf. 267, it was held that hay pressed in bales, ready for market, was not a manufactured article, though labor had been bestowed in cutting and drying the grass and bailing the hay. In Lawrence v. Allen, 7 How. 785 [12 L.Ed. 914], it was held that India-rubber shoes, made in Brazil, by simply allowing the sap of the India-rubber tree to harden upon a mould, were a manufactured article, because it was capable of use in that shape as a shoe, and had been put into a new form capable of use and designed to be used in such new form. In United States v. Potts, 5 Cranch, 284 [3 L. Ed. 102], round copper plates turned up and raised at the edges from four to five inches by the application of labor, to fit them for subsequent use in the manufacture of copper vessels, but which were still bought by the pound as copper for use in making copper vessels, were held not to be manufactured copper. In the case of United States v. Wilson, 1 Hunt, Mer. Mag. 167, Judge Betts held that marble which had been cut into blocks for the convenience of transportation was not manufactured marble, but was free from duty, as being unmanufactured."

In the case at bar the defendants with the use of machinery, materials and labor changed and converted four-door sedan automobiles into buses. When the operation performed by defendants was concluded the product delivered to the customer was not an automobile as that term is commonly understood even though it was driven by the same motor and steered by the same apparatus. It had a distinctive name, character and use from that of the automobile. It is clear that the defendants were and are engaged in manufacturing operations and not as repairers.

In the case of Cullum v. Stevens, D.C.N. D. Texas, 46 F.Supp. 73, 75, the court said: "Plaintiff for months was principally engaged in the work of making these pumps and was very efficient. In doing the work, his hands, suitable tools, dies and machinery were used. With this picture of work and materials furnished before us, if it was servicing, what did the plaintiff service? Plainly it was not servicing, but certainly producing, and I say manufacturing, under any and all definitions, goods for commerce. It was a tiny electric motor and sheet metal fan material when it came to defendant, and was a centrifugal water pump complete and ready for operation after being connected up in an air conditioning box, when it left."

In the case of Klepper v. Carter, Collector of Internal Revenue, 9 Cir., 286 F. 370, 371, the court said:

"In our opinion Klepper was properly held to be a manufacturer or producer of automobile trucks. While he did not make any of the several parts, nevertheless he bought the parts made by others and he sold a completed automobile truck. The fact that several different concerns did for him, a retail salesman, what, under the prevailing method, the purchaser may have had to do for himself, does not affect the question.

"We are not going too far when we recognize that the commonly known general method of transacting the automobile truck business was for a person to buy a chassis from one dealer or maker, and a body from another, and then to assemble the two. Klepper saved the purchaser all this trouble and made it his business to retail the product of his purchases as an automobile truck. Thus he produced or manufactured the truck. Rech-Marbaker Co. v. Lederer, Collector, D.C., 263 F. 593; Foss Hughes Co. v. Lederer, Collector, C.C., 287 F. 150." See, also, Fleming, Administrator of the Wage and Hour Division, United States Department of Labor v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, 572.

Since the defendants are engaged in manufacturing operations Section 13(a)

**170**

(2) is not applicable and the defendants are not exempt from the provisions of the Act. See Pars. 9, 11, 17 and 72 of Interpretative Bulletin No. 6, originally issued in December 1938, revised in June 1941. The interpretation of the Administrator is not binding on the court but is entitled to "great weight". United States v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Missel v. Overnight Motor Transp. Co., 126 F.2d 98, 108, affirmed 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. The following decisions support the interpretation: Davis v. Goodman Lumber Co., 4 Cir., 133 F.2d 52; Collins v. Kidd Dairy & Ice Co., 5 Cir., 132 F.2d 79; Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236, certiorari denied 63 S.Ct. 831, 87 L.Ed. ——.

In the case at bar the gross income of the defendants from the operations which are here held to be manufacturing was 36.6 per cent of the total gross income from the entire business during the period from January 1, 1942 to April 30, 1943. This was sufficient to place the employees actually engaged in such manufacturing under the provisions of the Act. In Davis et al. v. Goodman Lumber Co., Inc., supra, the court said:

"The complainant's employees brought suit to recover unpaid minimum wages and overtime compensation in divers amounts alleged to be due under the Act for services rendered to the corporation between January 1, 1939 and March 24, 1941 in the purchase and sale of lumber and in the production of rollers for mill machinery intended to be shipped in interstate commerce. During the years 1939 and 1940 the gross sales of lumber by the corporation were $264,529 and $345,999 respectively, of which by far the greater part were sales at retail within the State. But, in addition, the defendant corporation participated to a limited extent in the manufacture of rollers for cotton mills. The rollers consisted of metal shafts one and a half inches in diameter and three and a half to five feet long with wood glued on each side and metal pulley wheels at each end. The shafts were made by iron workers or foundries and sent to the Goodman Company so that the wooden attachments might be processed and glued to the shafts and then returned to the foundries where the wood was lathed and the pulley wheels attached. The Goodman Company performed less than ten per cent of the manufacturing process. The pro-

ceeds of this business done by the Goodman Company in 1940 and 1941 amounted approximately to $11,750 and $8,240 respectively, and of the rollers handled by the Goodman Company twenty-five per cent were sold and shipped by the foundries outside the State. The evidence indicates that two workmen employed by the Goodman Company were continually engaged in this activity under the supervision of a foreman during the period in question.

"Upon this state of facts the District Court was of the opinion that, as the Goodman Company was engaged primarily in the retail business of selling lumber in North Carolina, it was not engaged in commerce within the terms of the Act, and also that the employees were excluded from the wage and hour requirements contained in §§ 6 and 7 of the Act, 29 U.S.C.A. §§ 206 and 207, by the exemption provisions of § 13(a) (2) of the Act, 29 U.S.C.A. § 213(a) (2).

"Insofar as the employees engaged in the retail business of the defendant were concerned, this conclusion was obviously correct, for the exemption excludes from the wage and hour provisions of the Act 'any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce'. See White Motor Co. v. Littleton, 5 Cir., 124 F.2d 92. But, in our opinion, it was error to hold that the manufacturing business of the defendant was so negligible and unimportant as to escape altogether from the requirements of the Act. It is true that, as compared with the proceeds of the retail sales, the return from the roller business was small. But it was nevertheless substantial; and the manufacturing operations were continuous for two years or more and required the services of at least two workers and a foreman. There are intimations in the evidence that other employees, who handled the large amount of lumber that passed through the plant, may have had some incidental contact with the material ultimately fashioned and applied to the rollers, but so far as we can ascertain from the evidence before us their services seem to have been too unsubstantial and too remote from the manufacturing process to form a part of it. As to them we make no finding, but confine our determination to the holding that the workers actually engaged in processing the wood and affixing it to the cores of the rollers were subject to the wage and hour provisions of the Act. Walling v. Jack-

sonville Paper Co. [317 U.S. 564], 63 S. Ct. 332, 87 L.Ed. ——. Cf. Walling v. Peoples Packing Co., Inc., 10 Cir., 132 F.2d 236.

"Although the amount of manufacturing done by the defendant corporation was small and only twenty-five per cent of the goods produced was shipped in interstate commerce, the business did not fall outside the provisions of the Act. The character rather than the size of an activity is the controlling feature. Thus in United States v. Darby, 312 U.S. 100, 123, 657, 61 S.Ct. 451, 461, 85 L.Ed. 609, 132 A.L.R. 1430, where the constitutionality of the Fair Labor Standards Act was sustained, we find the Chief Justice saying: '* * * Congress, to attain its objective in the suppression of nationwide competition in interstate commerce by goods produced under substandard labor conditions, has made no distinction as to the volume or amount of shipments in the commerce or of production for commerce by any particular shipper or producer. It recognized that in present day industry, competition by a small part may affect the whole and that the total effect of the competition of many small producers may be great.'"

Other contentions are made by defendants which have been carefully considered but in the opinion of the court do not relieve the defendants from complying with the Act in the manufacturing of buses.