PHILLIPS et al. v. STAR OVERALL DRY
CLEANING LAUNDRY CO., Inc., et al.

No. 78.

Circuit Court of Appeals, Second Circuit.

May 7, 1945.

Barney Rosenstein, of New York City (Charles R. Katz, of New York City, of counsel; Sidney S. Wolchok, of New York City, on the brief), for plaintiffs-appellees-appellants.

Samuel Pflug, of Brooklyn, N. Y. (Levy, Kornblum & Katz and Joseph Katz, all of Brooklyn, N.Y., of counsel), for defendant-appellant-appellee.

Stanley I. Posner, Henry J. Fox, and Albert E. Arent, all of Washington, D. C., on the brief in opposition to petition for rehearing.

Posner & Fox, of Washington, D. C., amicus curiae for National Industrial Launderers & Cleaners Ass'n.

Cecil Sims, of Nashville, Tenn. (Bass, Berry & Sims, of Nashville, Tenn., of counsel), amicus curiae for American Institute of Laundering.

Douglas B. Maggs, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D.C., Irving Rozen, Regional Atty., of New York City, George M. Szabad, and Joseph M. Stone, Attys., United States Department of Labor for the Administrator of the Wage and Hour Division, both of Washington, D. C., amicus curiae in support of petition for rehearing.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

As Star was not the employer of the plaintiffs, it is clear that the complaint was properly dismissed as to it and no one now disputes that.

■ It should be noted at the outset that the plaintiffs were not engaged in interstate commerce simply because they performed part of the work involved in washing or otherwise cleaning and making ready for delivery to Star garments which Star later returned to its interstate customers as and when it saw fit to do so. Whether an employee is engaged in interstate commerce for the purposes of the Fair Labor Standards Act depends not upon "whether the employee's activities affect or indirectly relate to interstate commerce but [upon] whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase 'production of goods for commerce.'" McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538. If these plaintiffs are within the statute it must be because they are engaged in the production of goods for commerce. That alone would be enough to bring them within the Act unless the exemptions of § 13 apply to them. United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Fleming v. Arsenal Building Corporation, 2 Cir.,

125 F.2d 278. As it appears that about four per cent of the cleaning and pressing which the appellant did for Star was of garments used in Star's interstate business and that the plaintiffs were engaged in this work, it is obvious that if this was a production of goods within the statute it was a production of goods for interstate commerce.

■ We think it clear that the cleaning and pressing of these garments was work in an occupation "necessary to the production" of goods for commerce within § 3(j). A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

In § 3(j) of the Act are found the statutory definition of "produced" and a statement of the conditions upon which an employee "shall be deemed to have been engaged in the production of goods" within the scope of the statute. That subsection reads as follows:

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

Assuming for the moment that the garments cleaned and pressed were "goods" as defined in the statute, there can be no fair doubt but that the plaintiffs were engaged in the "production" of them within the meaning of that term in the statute. They were engaged in doing what of necessity required that the garments be "handled" or in some other manner "worked on."

Whether these garments were "goods" within the statutory meaning depends upon whether they are excluded by the last part of the definition of "goods" found in § 3(i) of the Act. That subdivision reads as follows:

"(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

In determining whether the garments cleaned and pressed are within the statute as goods we will lay aside those, if any, which may have been owned by the people who wore them. Though it may be that those who wore such garments out were ultimate consumers "other than a producer, manufacturer, or processor thereof", we now find it unnecessary to decide whether garments which may have been delivered "into the actual physical possession" of such ultimate consumers ceased upon such delivery to be goods within the Act. A large part if not all, of the garments were in another category. They were owned by Star and rented to its customers who had physical possession of them only temporarily and returned them to Star after they became dirty. It is impossible to tell from this record whether the same garments were returned to the same customers each time after cleaning but very likely they were not. While it is true in a sense that Star's customers were en masse the ultimate consumers, no delivery to them but for a special and limited purpose was shown. Star merely surrendered possession and regained possession at intervals while using the garments in conducting its own business. The delivery contemplated by § 3(i) of the statute is, we think, one which gives the ultimate consumer the right to deal with the "goods" as his own while they are being consumed. As no such delivery to the customers of Star was shown, these rented garments remained "goods" within the meaning of the statute after their rental and delivery to Star's customers.

In so far as Star itself may be said to be the ultimate consumer because the garments were used up in its business, the essential kind of delivery to it was shown. But that does not advance the cause of the appellant because the nature of Star's business required it to handle, work on, and transport these garments. Indeed without transportation of the garments in interstate commerce in furtherance of the business of Star there would be no basis at all for the application of the Act. Though Star may then have been an ultimate consumer in the sense that the garments were consumed in its business, it was not one "other than a producer, manufacturer, or processor thereof." An essential part of its business was to produce clean and pressed garments for the use of its customers and whenever a dirty garment was cleaned and pressed for Star's business purposes it was "produced" for such purpose. The delivery of those garments to Star did not, therefore, affect their status as goods within the meaning of the statute. Indeed, this recurrent cleaning and pressing was so like repairs for use that cases dealing with the effect of the statute upon employees engaged in making such repairs are in point. For examples of such cases see Slover v. Wathen, 4 Cir., 140 F.2d 258; Bracey v. Luray, 4 Cir., 138 F.2d 8.

The remaining question raised by the appellant is whether the provisions of sections 6 and 7 of the Act upon which the plaintiffs rely in bringing this suit apply to them in the light of § 13(a) (2) of the Act which provides that they shall not apply to "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

It has been held that despite the disjunctive "or" between retail and servicing in subdivision (a) (2) of § 13, the legislative history, coupled with other considerations taken to be persuasive, makes the proper construction of this subdivision one of the limitation of servicing to retail servicing, i.e., to the selling of services, instead of goods, at retail. Some of these cases are Bracey v. Luray, supra; Guess v. Montague, 4 Cir., 140 F.2d 500; Walling v. Roland Electrical Co., 4 Cir., 146 F.2d 745; Walling v. Sandok, 5 Cir., 132 F.2d 77; and Reynolds v. Salt River Valley Water Users Association, 9 Cir., 143 F.2d 863. The contrary view was taken in Lonas v. National Linen Service Corporation, 6 Cir., 136 F.2d 433. See also, Martino v. Michigan Window Cleaning Co., 6 Cir., 145 F.2d 163; Stucker v. Roselle, D.C., 37 F.Supp. 864. We do not now find it necessary to follow either one or the other of these conflicting views.

In trying to determine to what extent, if at all, the subdivision controls decision on this appeal, we must keep in mind that the purpose of including (a) (2) in § 13 was to make sure that employees working for local retailers near state lines, who might not themselves be employed in a "local retailing capacity" so as to be exempted under (a) (1), would be exempted anyway. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; A. H. Phillips, Inc. v. Walling, 65 S. Ct. 807. The addition of the words "or

service", and "or servicing" was made in the report of the Conference Committee of June 11, 1938, and seems to have been to make sure that employees of service establishments whose activities affect commerce in substantially the same way as the activities of retail establishments should be treated in the same manner. We should also keep in mind that the statute is remedial and that an exemption clause ought not to be enlarged to the point of obstructing the attainment of the result that Congress was seeking to achieve. A. H. Phillips, Inc. v. Walling, supra.

■ We take it for granted that a laundry is a typical example of a service establishment. Yet it does not follow because the appellant is a laundry apparently doing only what laundries usually do, that it is a service establishment in respect to work done for Star which, if done by the employees of Star itself, would have made them engaged in the production of goods for commerce. As to those goods we think the appellant must be held to be a co-producer with Star who could not by dividing the work of production between employers make into "servicing" what would otherwise be production. We said as much by way of illustration in Fleming v. Arsenal Building Corporation, supra. Now we have a case within that illustration, and what was there said is directly applicable. We are not now more inclined to believe than we were then that "it is the character of the 'servicing' itself that counts, divorced from the 'production' of which it is a part." A producer cannot avoid the effect on the production of goods for commerce which compliance with minimum hour and wage regulations entails by having part of the work done by a service establishment whose servicing happens to be for the greater part in intrastate commerce. Nor can a service establishment selling its services to a producer who uses them as part of his production of goods for commerce be the source of exclusion of its employees so engaged from the provisions of the Act. It would be most unreasonable to construe an exemption clause in a remedial statute so as to make its application dependent upon "the capricious incidence of the act resulting from the accident of the industrial division of the whole pro-

cess." Fleming v. Arsenal Building Corporation, supra, 125 F.2d at page 280.

■ No interest is recoverable. Arsenal Building Corporation v. Greenberg, —— U. S. ——, 65 S.Ct. 895, decided April 9, 1945.

Judgment affirmed with costs and an attorney's fee of $400 on appeal to be paid by the appellant All Service Laundry Corporation.

CLARK, Circuit Judge (concurring).

Though I agree with what is said in the opinion, I should have preferred to rest decision upon the broader ground that even as to the cleaning of those garments owned by the people who wore them, defendant-appellant was within the Act, i.e., that the limitation of "goods" in § 3(i) to exclude those delivered into "the actual physical possession of the ultimate consumer" does not apply when those goods are again returned, even if only for a limited time, to the stream of interstate commerce as otherwise defined in the Act. This is in line with the legislative history—now persuasively presented to us in the Administrator's brief amicus curiae—showing that the provision was intended to prevent an otherwise possibly overextensive application of the Act's penalties, even to an ultimate consumer merely receiving the goods at the end of their interstate journey; it accords with the case precedents to date (Walling v. Roland Electrical Co., 4 Cir., 146 F.2d 745; Slover v. Wathen, 4 Cir., 140 F.2d 258, 259; Walling v. Armbruster, D.C.W.D. Ark., 51 F.Supp. 166; cf. Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897); and it accords further with the views of cases such as Lonas v. National Linen Service Corporation, 6 Cir., 136 F.2d 433, and Martino v. Michigan Window Cleaning Co., 6 Cir., 145 F.2d 163, giving a somewhat extensive content to the exemption of § 13(a) (2) for "retail or service establishments," but in effect repudiating this suggested more extensive and overlapping, if not conflicting, exemption. The withdrawal of our former opinion eliminates all direct support for appellant's contention, but it seems to me so opposed to the fair and just operation of the Act—as, indeed, the Administrator demonstrates in his brief—that I think we should studiously avoid any implication of support for it.