VALENTÍN OCASIO CALO, Plaintiff and Appellant, *v.* FAJARDO SUGAR CO., Defendant and Appellee.

No. 12770.     Decided June 19, 1963.

*Vicente Géigel Polanco* and *Vicente Géigel Lanuza* for appellant. *Sifre & Ruiz Suria* and *Baltasar Corrada del Río* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

This case of claim for wages was submitted to the trial court on the following stipulation signed by the parties and approved by the court:

"STIPULATION—In relation to the claim of petitioner Valentín Ocasio Calo, the parties, through their attorneys, submit to the consideration of the court the stipulation of the following facts:

"(1) That petitioner Valentín Ocasio Calo has worked as gardener for Fajardo Sugar Co. from the beginning of 1948 until the date of this stipulation.

"(2) That during the years 1948 to 1955 he worked as gardener in the residence of Herman Luchs, then superintendent of the railroad up to 1951 and since 1951 Manager of Central Canóvanas.

"(3) That from 1955 to the date of this stipulation the claimant has worked as gardener in three houses occupied by defendant's executives.

"(4) That the residences where claimant has worked as gardener are situated on land belonging to Fajardo Sugar Co. in Canóvanas. The land where said residences are located is separated from the area where the factory is by a state highway and Río Grande de Loíza, there being a bridge over said river and highway.

"(5) That the regular work week of petitioner was of 48 hours and the time worked by him appears in respondent's payroll.

"(6) That claimant has always received the minimum wages corresponding to the agricultural phase of the sugar industry.

"(7) That petitioner has always received his wages in the payroll office of Fajardo Sugar Co. in Central Canóvanas.

"(8) That defendant does not plant sugar cane on the land where petitioner has served.

### "QUESTION OF LAW

"The parties submit to the consideration and decision of the court the following question of law:

"Whether petitioner is entitled to the payment of wages corresponding to the years from 1948 to the date hereof according to the minimum wages corresponding to the agricultural phase, as computed and paid by the employer, or the minimum wages corresponding to the industrial phase of said sugar industry, as alleged by him.

"The court approves the former stipulation and grants the parties a term of twenty (20) days to file briefs."

The stipulation is dated June 10, 1958.

Deciding the question in issue submitted in the light of the facts stipulated, the trial court stated that all the out-buildings, offices, "utilities" and "facilities" that the employer needs for the operation of its business are located in the same place of the sugar mill; also the warehouses, the residences of the administrator and of other top executive officers of the company; and that these officers' residences are physically connected to the place where the factory is located by a bridge, which is for the exclusive use of the persons who live in said parcel of land and who are intimately related to the "functioning," "operation" and "administration" of respondent's business.

Likewise, the trial court stated in its conclusions of law that the work done by petitioner, although performed in the soil and comprised within that phase of agriculture known as "horticulture," is not performed in relation to an "agricultural business". Said "services", it said, are rather a part of the "maintenance and upkeep and cleaning" of the gardens and "lands" that surround the residence of the administrator and other high executive officers.

After discussing the situation in the light of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, 29 U.S.C.A. §§ 201, 203), the trial court held that petitioner was not covered by the provisions of said Fair Labor Standards Act of Congress because of the fact that the respondent was engaged in the processing of sugar for exportation, and decided that that was sufficient to hold that petitioner was not covered either by Mandatory Decree No. 3, in neither one of the two phases of the sugar industry. It rendered judgment dismissing the claim.

Assuming, without it being understood that we are deciding it in that sense, that the Federal Fair Labor Standards

Act is not applicable to this petitioner, we think that it was not an impediment for the acknowledgment of his claim.[1]

Mandatory Decree No. 3 defines the sugar industry as the production of "sugar-cane" in its agricultural and industrial phases including, *but not limited to*:

*"Agricultural Phase*: Preparation of the soil, planting, cultivation, harvesting, transportation of the cane when performed by the farmers themselves, and any other operation of an 'agricultural nature'; and

*"Industrial Phase*: The transportation of the cane when performed by the sugar central, the weighing, the preparation and grinding of the cane, the elaboration, handling, packing, weighing and warehousing of sugar and any other operation related to the industrial phase of the manufacture of sugar from the moment the cane is weighed on the scale of the central until the sugar is removed from the warehouse of the central; provided, that the transportation of sugar, when performed by the centrals themselves, shall be considered as part of the industrial phase."

The preceding definition, which is not exclusive, describes the two principal phases of the industry, the agricultural and

---

[1] In the light of the interpretative decisions of the Fair Labor Standards Act of 1938 aimed at enforcing its underlying purposes of protecting the labor class, it could not be affirmed as one of those premises that do not admit a contrary view that petitioner was not probably covered by said legislation, although it is not necessary to decide that now. In the great judicial casuistry of those who are and those who are not covered by the Act, there has been room for all kinds of evaluations. We indeed understand the expression of Mr. Justice Frankfurter in one of the first leading cases to construe the statute, *Kirschbaum Co.* v. *Walling,* 316 U.S. 517 (1942) : "To search for a dependable touchstone by which to determine whether employees are 'engaged in commerce or in the production of goods for commerce' is as rewarding as an attempt to square the circle." *Cf. Kirschbaum, supra,* and also the leading case of *Borden Co.* v. *Borella,* 325 U.S. 679 (1945); *Overnight Motor Co.* v. *Missel,* 316 U.S. 572; *Warren-Bradshaw Co.* v. *Hall,* 317 U.S. 88; *Walling* v. *Jacksonville Paper Co.,* 317 U.S. 564; *Overstreet* v. *North Shore Corp.,* 318 U.S. 125; *McLeod* v. *Threlkeld,* 319 U.S. 491; *Armour & Co.* v. *Wantock,* 323 U.S. 126; *Martino* v. *Michigan Window Cleaning Co.,* 327 U.S. 173; *Farmers Irrigation Co.* v. *McComb,* 337 U.S. 755; *Sucrs. A. Mayol & Co.* v. *Mitchell,* 280 F.2d 477, 481; *Public Building Authority of Birmingham* v. *Goldberg,* 298 F.2d 367; *Phillips* v. *Star Overall Dry Cleaning Laundry Co.,* 149 F.2d 416.

the processing of the cultivated product. It does not mean that the Mandatory Decree, as to the industrial phase, only covers work within the scope used to describe said phase. The Fair Labor Standards Act has never been construed to cover only that work which is in direct or indirect contact with the processing or handling of the product which is later channeled into interstate commerce.

The enterprises are a unit of operation. In this respect, it is not difficult to understand why it is a traditional norm in the sugar industry to provide dwellings for its administrative officers, technicians and other high executives near the mill, as a necessity of the enterprise because of the nature of its functioning. And it is evident that the nettle, bramble, weeds and hawthorn, even the poet's, "trellis of cundeamors" should not stand in the way of the free entrance to those residences, as well as that its surroundings be kept clean and trimmed as becomes the hierarchy of its dwellers. The petitioner in this sense was a maintenance employee like any other.

Although the respondent enterprise was engaged in the sugar industry, its activities did not involve the agricultural phase. Every person employed by it was therefore employed in its industrial business for the production of sugar. Mandatory Decree No. 3, far from excluding any employment in this industrial phase, included them all in fixing the minimum wage rate to be paid by an employer that hires workers in the industrial phase of the sugar production—that was the only activity of the respondent enterprise:

> "(a) *All kinds of work* except as classified below
> ..................... $0.33" per hour.

The specific enumeration of occupations that follows the preceding provision (a) is for the purpose of fixing an hourly rate higher than $0.33. It does not mean, nor can it be thus interpreted without annulling the provision (a) that is at the head of the list, that only the occupations enumerated

therein are covered by the industrial phase. See: *Mario Mercado e Hijos* v. *Minimum Wage Board*, 75 P.R.R. 29 (1953), where, in relation to the agricultural phase we held that laborers employed in the tilling, felling, maintenance, clearing and cutting of grass—on which the oxen grazed—which in turn were used to haul carts, were covered by Mandatory Decree No. 3 in its agricultural phase.

According to the stipulation, petitioner was paid on the basis of an agricultural phase which did not exist in respondent's enterprise. We presume he was paid the minimum of $1.50 or $1.40 per day of work provided for unclassified work by Mandatory Decree No. 3, in that phase. He was entitled to receive at least the minimum of 33 cents per hour provided by said Decree in the industrial phase, while said minimum was not raised by the provisions of the Minimum Wage Act of 1956, Act No. 96 of June 26 of that year, §§ 6, 37 I, in force since June 26, 1956. Petitioner was also entitled to have his workweek and overtime computed according to Mandatory Decree No. 3 in relation to the industrial phase of the sugar industry.

The judgment dismissing the claim will be reversed, and another rendered instead granting the claim, and the record will be remanded to the trial court so that it may compute the laborer's compensation, and provide for any further proceeding, pursuant to the pronouncement herein.