VALENTÍN OCASIO CALO, querellante y recurrente, *v.* FAJARDO SUGAR CO., querellada y recurrida.

*Número:* 12770 *Resuelto:* 19 de junio de 1963

*Vicente Géigel Polanco* y *Vicente Géigel Lanuza,* abogados del recurrente; *Sifre & Ruiz Suria* y *Baltasar Corrada del Río,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Este caso sobre reclamación de salarios le fue sometido a la Sala sentenciadora en virtud de la siguiente estipulación que firmaron las partes y aprobó el Tribunal:

"ESTIPULACIÓN—En relación con la reclamación del querellante Valentín Ocasio Calo, las partes, por conducto de sus abogados, someten a la consideración del Hon. Tribunal la estipulación de los siguientes hechos:

"1) Que el querellante Valentín Ocasio Calo ha trabajado como jardinero para la Fajardo Sugar Co. desde principios del año 1948 hasta la fecha de esta estipulación.

"2) Que durante los años 1948 a 1955 trabajó como jardinero en la residencia del señor Herman Luchs, entonces Superintendente de Ferrocarril hasta 1951 y desde 1951 Administrador de Central Canóvanas.

"3) Que desde 1955 hasta la fecha de esta estipulación el reclamante ha trabajado como jardinero en tres casas ocupadas por ejecutivos de la demandada.

"4) Que las residencias donde el reclamante ha trabajado como jardinero están radicadas en terrenos pertenecientes a la Fajardo Sugar Company en Canóvanas. Los terrenos donde están dichas residencias están separados del área donde está la factoría por una carretera estatal y por el Río Grande de Loíza, existiendo un puente sobre dicho río y carretera.

"5) Que la semana regular de trabajo del querellante era de 48 horas y el tiempo trabajado por el querellante consta de las nóminas de la querellada.

"6) Que el reclamante ha recibido siempre el salario mínimo correspondiente a la fase agrícola de la industria azucarera.

"7) Que el querellante ha cobrado siempre su salario en la oficina de pago de la Fajardo Sugar Co. en la Central Canóvanas.

"8) Que la demandada no cultiva caña de azúcar en los terrenos en que el querellante ha prestado sus servicios.

### "CUESTIÓN DE DERECHO

"Las partes someten a la consideración y decisión del Hon. Tribunal la siguiente cuestión de derecho:

"Si el querellante tiene derecho a que se le liquiden los salarios correspondientes a los años 1948 a la fecha de esta estipulación a base del salario mínimo correspondiente a la fase agrícola, según lo ha computado y pagado el patrono, o el salario mínimo correspondiente a la fase industrial de dicha industria azucarera, según él alega.

"El Tribunal le imparte su aprobación a la anterior estipulación y concede a las partes un término de veinte (20) días para radicar alegatos."

La estipulación está fechada 10 de junio de 1958.

Resolviendo la cuestión litigiosa que le fue sometida a la luz de los hechos estipulados, la Sala sentenciadora expresó que en el sitio donde está localizado el molino están todas las dependencias, oficinas, "servicios" y "facilidades" que necesita el patrono para la operación de su negocio; también los almacenes, residencias del administrador y demás altos funcionarios ejecutivos de la empresa; y que las residencias de estos ejecutivos están físicamente vinculadas al sitio donde está la factoría por un puente que es para el uso exclusivo de las personas que residen en dicho predio de terreno y que están íntimamente relacionadas con el "funcionamiento", "operación" y "administración" del negocio de la querellada.

Igualmente expresó la Sala sentenciadora ya en sus conclusiones de derecho que los trabajos realizados por el querellante, aunque se hacen en la tierra y están comprendidos dentro de aquella rama de la agricultura conocida como "horticultura", no se efectúan con relación a un "negocio agrícola". Dichos "servicios", dijo, son más bien parte del "mantenimiento y conservación y limpieza" de los jardines y "terrenos" que rodean la residencia del administrador y otros altos funcionarios ejecutivos.

Después de discutir la situación a la luz de la Ley de Normas Razonables del Trabajo de 1938 según ha sido enmendada, (52 Stat. 1060, 29 U.S.C.A. secs. 201, 203) la Sala sentenciadora concluyó que el querellante no estaba cubierto por las disposiciones de dicha Ley de Normas Razonables del Congreso por el hecho de que la querellada se dedicara a la elaboración de azúcar para la exportación, y resolvió que eso era suficiente para fallar que tampoco el querellante estaba cubierto por el Decreto Mandatorio Núm. 3, en ninguna de las dos fases de la industria azucarera. Dictó sentencia declarando sin lugar la reclamación.

Asumiendo, sin que se entienda que lo estamos resolviendo en ese sentido, que la Ley de Normas Razonables del Trabajo federal no se le aplicara a este querellante, nos parece que ello no era óbice para que se le reconociera su reclamación. [1]

El Decreto Mandatorio Núm. 3 define la industrial de azúcar como la producción de "caña de azúcar" en su aspecto agrícola e industrial incluyendo, *sin que se entienda una limitación*:

---

[1] A la luz de las decisiones interpretativas de la Ley de Normas Razonables del Trabajo de 1938 orientadas a hacer valer sus fines y propósitos de protección a la clase trabajadora, no podría afirmarse como uno de esos supuestos que no admiten criterio en contrario, que el querellante probablemente no estaría cubierto por dicha legislación, aunque no es necesario resolver esto ahora. En la gran casuística judicial de quiénes están y quiénes no están cubiertos por la Ley, ha habido albergue para toda clase de evaluaciones. Nos explicamos, ciertamente, la expresión del Juez Frankfurter en un caso normativo de los primeros en interpretar el estatuto, *Kirschbaum* v. *Walling*, 316 U.S. 517 (1942): "El buscar una piedra de toque para decidir mediante la cual, si empleados están dedicados al comercio o en la producción de artículos para el comercio, resulta tan remuneratorio como el intentar cuadrar el círculo." Cf. *Kirschbaum*, ante; y el caso también normativo de *Borden Co.* v. *Borella*, 325 U.S. 679 (1945); *Overnight Motor Co.* v. *Missel*, 316 U.S. 572; *Warren-Bradshaw Co.* v. *Hall*, 317 U.S. 88; *Walling* v. *Jacksonville Paper Co.*, 317 U.S. 564; *Overstreet* v. *North Shore Corp.*, 318 U.S. 125; *McLeod* v. *Threlkeld*, 319 U.S. 491; *Armour & Co.* v. *Wantock*, 323 U.S. 126; *Martino* v. *Michigan Window Cleaning Co.*, 327 U.S. 173; *Farmers Irrigation Co.* v. *McComb*, 337 U.S. 755; *Sucrs. A. Mayol & Co.* v. *Mitchell*, 280 F.2d 477, 481; *Public Building Authority of Birminghan* v. *Goldberg*, 298 F.2d 367; *Phillips* v. *Star Overall Dry Cleaning Laundry Co.*, 149 F.2d 416.

(Fase agrícola) la preparación del terreno, la siembra, cultivo, recolección, transporte de caña cuando sea hecho por agricultores, y cualquier otra operación de "naturaleza agrícola"; y (Fase industrial) la transportación de la caña cuando sea hecha por centrales azucareras, el pesado, la preparación y molienda de la caña, y la elaboración, manipulación, empaque, pesado y almacenaje del azúcar y cualquier otra operación relacionada con el aspecto industrial de la manufactura de azúcar desde que la caña es pesada en la romana de la central hasta que el azúcar es removida de los almacenes de ésta; disponiéndose, que la transportación del azúcar, cuando sea hecha por las centrales, se considerará como parte de la fase industrial.

La anterior definición, que no es exclusiva, describe las dos fases principales de la industria, la agrícola y la elaboradora del producto cultivado. No quiere decir que el Decreto Mandatorio, en cuanto a la fase industrial, cubra únicamente el trabajo en aquello que se utiliza para describir dicha fase. La Ley de Normas Razonables del Trabajo nunca ha sido interpretada para cubrir solamente aquella labor que viene en contacto directo o indirecto con la elaboración o manejo del producto que luego se canaliza en el comercio interestatal.

Las empresas son una unidad de funcionamiento. En este respecto, no es difícil comprender la razón por la cual es una norma tradicional en la industria azucarera el proveerle casas a sus administradores, técnicos y altos ejecutivos en las inmediaciones del molino, como una necesidad de la empresa dada la naturaleza de su funcionamiento. Y se explica que la ortiga, las zarzas, el yerbajo o la maya, aun la del Poeta, "arropás de cundiamores" no impidan el libre acceso a esas residencias, así como el que sus alrededores se mantengan en aquel grado de limpieza y buena presentación que demanda la jerarquía de sus moradores. El querellante en este sentido era un empleado de conservación como cualquier otro.

Aunque la empresa querellada se dedicaba a la industria del azúcar, en sus actividades no existía la fase agrícola. Toda persona empleada por ella era empleada, por lo tanto,

en su negocio industrial de producción de azúcar. El Decreto Mandatorio Núm. 3, lejos de excluir empleo alguno en esta fase industrial, incluyó a todos al disponer así el tipo mínimo de salario a ser pagado por un patrono que emplee trabajadores en la fase industrial de la producción de azúcar—ésa era toda la actividad de la empresa querellada—:

> "(a) *Toda clase de trabajo* excepto los abajo clasificados ........ $0.33" por hora.

La enumeración específica de empleos que sigue a la disposición "(a)" anterior es a los efectos de fijar un salario por hora mayor de $0.33. Ella no quiere decir, ni puede así interpretarse sin anular la disposición "(a)" que encabeza la lista, que sólo los empleos ahí enumerados están cubiertos por la fase industrial. Consúltese: *Mario Mercado e Hijos* v. *Junta*, 75 D.P.R. 31 (1953), en donde, en relación con la fase agrícola, sostuvimos que obreros que se dedicaban a cultivar, talar, conservar, desmontar y limpiar pastos—que se comían los bueyes—que luego arrastraban los carros, estaban cubiertos por el Decreto Mandatorio Núm. 3 en su fase agrícola.

Según la estipulación, al querellante se le pagaba a base de una fase agrícola que no existía en la empresa de la querellada. Presumimos que le pagaban el mínimo de $1.50 ó de $1.40 por un día de trabajo dispuesto para los trabajos no clasificados en el Decreto Mandatorio Núm. 3, en esa fase. Tenía derecho a que se le pagara cuando menos el mínimo de 33 centavos la hora dispuesto por dicho Decreto en la fase industrial, mientras dicho mínimo no pudo quedar aumentado por las disposiciones de la Ley de Salario Mínimo de 1956, Ley Núm. 96 de 26 de junio de ese año, Secs. 6, 37 I, en vigor desde el 26 de junio de 1956. El querellante tenía derecho también a que su semana de trabajo, y su trabajo extra, se determinaran según el propio Decreto Mandatorio Núm. 3 en lo referente a la fase industrial del azúcar.

*Se revocará la sentencia que desestimó la reclamación, se dictará otra declarando con lugar la misma, y se devolverán*

*los autos a la Sala sentenciadora para que liquide la compensación de este obrero, y tramite cualquier otro ulterior procedimiento, según lo aquí dispuesto.*