FRAZEE and another v. MOFFITT.

*Circuit Court, N. D. New York.* February 1, 1882.

1. CUSTOMS DUTIES—REV. ST. § 2516—IMPORTED HAY.
    Hay is a raw or unmanufactured article, and subject to a duty of 10 per centum *ad valorem* only.
2. SAME—PROTEST—REV. ST. § 2931.
    When the collector has liquidated the duties on hay at 20 per cent., under Rev. St. § 2516, a protest "against any greater rate of duties being charged upon hay shipped, * * * than at the rate of 10 per centum *ad valorem*, for the reason * * * that no higher rate than 10 per centum can lawfully be charged, or hay imported under the laws of the United States concerning duties on imports," is sufficient under Rev. St. § 2931, (Act of June 30, 1864, c. 14.)

At Law.

*Kelley & MacRae*, for plaintiffs.

*Martin I. Townsend*, Dist. Atty., for defendant.

BLATCHFORD, J.    This is a suit against the collector of customs at Rouse's Point, to recover back duties paid on hay in bales, imported from Canada into the United States.    There is no duty on hay by name, but section 2516 of the Revised Statutes provides as follows:

"There shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not herein enumerated or provided for, a duty of ten per centum *ad valorem;* and on all articles manufactured in whole or in part, not herein enumerated or provided for, a duty of twenty per centum *ad valorem.*"

Hay is not otherwise enumerated or provided for.    The collector imposed a duty of 20 per cent. on the hay, as a manufactured article. The plaintiffs protested and appealed to the secretary of the treasury.    The ground of the appeal was that the duty should have been only 10 per cent., because, under section 2516, hay was a raw or unmanufactured article.    The decision of the collector was affirmed. This suit was then brought.    At the trial the plaintiffs had a verdict for $1,976.86, and the defendant now moves for a new trial on a bill of exceptions setting forth all the testimony taken on the trial.

1. There is an exception by the defendant as to the sufficiency of

the protest. The protest was "against any greater rate of duties being charged upon hay shipped to or by us from Canada to the United States, entered with you or at the customs office at Rouse's Point, than at the rate of ten per centum *ad valorem,* for the reason and on the grounds that no higher rate than ten per centum can lawfully or properly be charged on hay imported under the laws of the United States concerning duties on imports." There was also a notice that an appeal would be taken in case of an adverse decision. A proper protest, as well as an appeal, are prerequisites to the right to sue. Section 3011 Rev. St., as amended by the act of February 27, 1877, (20 St. at Large, 247.) The protest must set forth "distinctly and specifically" the grounds of objection to the decision of the collector as to the rate and amount of duties. Section 2931, Rev. St. This provision was made by the act of June 30, 1864, § 14, (13 St. at Large, 214,) and is substantially the same as that in the act of February 26, 1845, (5 St. at Large, 727,) which required the protest to set forth "distinctly and specifically" the grounds of objection to the payment of the duties.

It is contended for the defendant that the protest in this case does not comply with the statute, in that, although it objects to paying more than 10 per cent., it states no ground except that no more than 10 per cent. ought to be paid; and that it states only a conclusion of law, and leaves the defendant to find out as best he can why it is the law. But the protest was made in view of a liquidation of duties at 20 per cent., which is the "greater rate of duties" referred to in the protest. The liquidation at 20 per cent. was under section 2516. No other provision of law than that section could possibly apply to hay. With section 2516 and the protest before him, the collector could not fail to understand from the protest that the rate of 10 per cent. claimed in it to be the proper duty was the *rata* of 10 per cent. named in section 2516.

A mere protest against the payment of the duty exacted is not a compliance with the statute. This protest is not a mere protest against the duty charged. It is a protest against that, with the further statement that only 10 per cent. should have been charged on hay. Hay not being enumerated or provided for anywhere, if not in section 2516, and the 20 per cent. and the 10 per cent. being put in contrast both in the protest and in section 2516, and the collector having acted under section 2516 in imposing the 20 per cent., the language of the protest fairly referred the collector to the 10 per cent. clause of section 2516. A protest is a commercial document, usually made in the hurry of business, entitled to a liberal interpretation, and not requiring technical precision, while at the same time it must show fairly that the objection afterwards made at the trial was in the mind of the party and was brought to the knowledge of the collector, so as to secure to the government the practical advantage which the statute was designed to secure. *Swanston* v. *Morton,* 1

Curt. C. C. 294; *Kriesler* v. *Morton,* Id. 413; *Burgess* v. *Converse,* 2 Curt. C. C. 216.

The case of *Steegman* v. *Maxwell,* 3 Blatchf. C. C. 365, is nearer like the present case than any one I have been able to find. The plaintiffs imported articles known in commerce as "thread laces," composed of linen and cotton. The collector exacted 25 per cent. duty on them as "cotton laces," under Schedule D of the act of July 30, 1846, (9 St. at Large, 46.) "Thread laces" was named in Schedule E, which was a 20 per cent. schedule. The protest was against the payment of the 25 per cent., and claimed that the "thread laces" were liable to a duty of only 20 per cent. The court held that the protest was a notice to the collector, adequately distinct and specific, of the grounds of objection to the payment demanded, and satisfied the provisions of the statute. The protest did not say that the ground was that the article was provided for by name as "thread laces," in Schedule E, but it named the 20 per cent. and protested against the 25 per cent. Schedule E immediately followed Schedule D, in the same act. In the present case the protest names the 10 per cent. and protests against the 20. The only suggestion against it is that it does not say that hay is not an article manufactured in whole or in part, and that it is a raw or unmanufactured article. But these provisions are in the same section. In the case above cited it was expressly held that the statute was complied with, although the protest did not designate the particular schedule and name under which the importation should be ranked.

The principle of the foregoing views is sanctioned by the supreme court in *Converse* v. *Burgess,* 18 How. 413, where it is said, in regard to the protest act of 1845: "We are not, therefore, disposed to exact any nice precision, nor to apply any strict rule of construction upon the notices required under this statute. It is sufficient if the importer indicates distinctly and definitely the source of his complaint, and his design to make it the foundation for a claim against the government." The protest in this case must be held to have been sufficient.

2. At the close of the evidence the defendant asked the court to direct a verdict for the defendant, on the ground that the undisputed evidence showed that hay was a manufactured article, and by the law subject to a duty of 20 per cent. *ad valorem.* The motion was denied and the defendant excepted, and the case was submitted to the jury, which found for the plaintiffs. The defendant contends that a verdict for the defendant should have been directed.

The hay was pressed in bales ready for market, and not chopped up fine. It was mostly timothy hay used for horse feed. The usual process in regard to the hay is to cut the grass and scatter it by a tedder to enable it to dry, and then rake it up and put it into cocks, and let the cocks remain in the field overnight, and the next day open out the cocks to dry, and then put it in the barn that day. While

in the cocks the hay sweats. After it is put in the barn, it must remain there a month before it is dry enough to be pressed and baled. The grass must be cut while green to make good hay. If left to dry uncut it becomes worthless. When the grass is cut green it contains starch and gluten. After it is cut the heat of the sun and the oxygen in the air convert the starch into sugar before the hay becomes dry.

The defendant contends that, on this evidence, hay is a manufactured article, under section 2516; that hay is a new article transformed from grass, as much as sugar is from the cane juice or the maple sap, or as salt is from the saline brine; that the heat of the sun, and the air, and human skill and labor, manufacture the grass into hay; and that the verdict for the plaintiffs was not only without evidence, but against the evidence.

I am of opinion that nothing that was done or occurred to the grass which became this hay, caused it to be other than a raw or unmanufactured article, or to be an article manufactured in whole or in part, under section 2516; that the jury were justified in finding the verdict they did; that the direction to find a verdict for the defendant would have been erroneous; that a verdict for the defendant would have been erroneous; and that it would have been proper to direct a verdict for the plaintiffs.

If hay is a raw article it is liable to only 10 per cent. duty. Many articles are properly called raw which have undergone some manipulation. Cotton is picked from the bolls, and cleaned by ginning, and baled. Yet it is raw cotton in the bale. Wheat is cut, and the grains are threshed out, and then subjected to a cleaning machine, and then bagged. Yet it is raw wheat in the bag. So with other grains. The cotton and the grains undergo such change and preparation as exposure to light, and natural or artificial heat, and air, and the manipulation they receive, produce or allow, be it more or less. Yet neither the cotton nor the grains would be said to be manufactured. Salt and sugar are new articles. Cotton and grains are the same articles they were when on the plant with its roots in the earth. So hay is the same article it was when it was stalks of grass with roots in the earth. It is dried, to be sure; but the drying and any conversion of starch into sugar are mere incidents of the necessary cutting to enable it to be stored for food in latitudes where grass cannot be found all the year round. Where it can be so found no hay is stored. Dried apples would not be called a manufactured article, though the apple is peeled and cored and sliced, and dried by exposure to the sun and manipulation. The substance of dried apples is still apples. The substance of dried grass or hay is still grass. Change of name and manipulation do not necessarily constitute manufacture, within the meaning of section 2516. Each case must be decided according to its own circumstances. The verdict of the jury in this case was a correct one, under the foregoing views, and the motion for a new trial is denied.