(C. D. 656)

HALF MOON MANUFACTURING & TRADING CO. ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 29, 1942)

*Daniel P. McDonald* for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*James Donnelly, Joseph F. Donohue, and William J. Vitale*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: Three varieties of peat moss are involved in this case. The importations were made at several ports and duty was assessed on the peat moss at the rate of 50 cents per ton under the *eo nomine* provision of paragraph 1548 of the Tariff Act of 1930 for peat moss. It is claimed by the plaintiffs that the commodity is free of duty under paragraph 1685 of the same act, which paragraph is as follows:

PAR. 1685. Guano, basic slag (ground or unground), manures, and (notwithstanding any other provision of this Act) those grades of all other substances used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers.

The varieties or grades of peat moss are designated on the invoices as Holland horticultural standard or garden, Holland poultry standard, and Holland stable standard peat moss. The claim with respect to the Holland stable standard was abandoned and is therefore overruled as to that merchandise.

Samples of the horticultural and poultry grades were produced and admitted in evidence as exhibits 1 and 2, respectively. There was also introduced a chemical analysis of the two grades (exhibit 3). It was agreed at the second hearing that all of the peat moss described on the invoices as horticultural or garden peat moss is the same and that the commodity described as poultry peat moss is the same in all material respects in all of the consolidated cases. As to these two grades the government examiner of peat moss at the port of New York, after examining the samples and the analyses and comparing the samples with the two samples in the case of *Peat Moss Corp.* v. *United States* (4 Cust. Ct. 181, C. D. 319), testified that in his opinion these two types are similar in all material respects to the peat moss which was before the court in the cited case. The record in the *Peat Import Corp.* case, *supra*, was incorporated herein.

In the case incorporated it is noted that the merchandise was imported in October, 1937. The peat moss now before us was brought into the United States during the period from October, 1938, through January, 1940. In the decision cited the court held that horticultural peat moss was free of duty as fertilizer under paragraph 1685, *supra*. This was based upon a finding that the peat moss there involved was shown to be chiefly used as a fertilizer at and immediately prior to the time of its importation.

In so holding the court cited the case of *Wilbur-Ellis Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762, which held, and we quote:

While the common or commercial meaning of an *eo nomine* designation in a tariff act must be determined as of the effective date of that act, we think that where it is provided that an article shall be classified under a particular provision

of a tariff law if chiefly used for a specified purpose, a different rule should prevail. In such case, if there be an *eo nomine* designation, the common meaning thereof must be determined as of the date of the enactment of the tariff act, but if it is further provided that the thing designated shall be classified under a given provision only if chiefly used for a specified purpose, the question of use should be determined, not as of the effective date of the tariff act but as of the date of the importation of the particular merchandise involved or immediately prior thereto.

Whether the proof produced in the case before us is sufficient to prove the use of the horticultural peat moss here involved at and immediately prior to the respective dates of importation, however, is a question which we need not decide in view of the government's concession in its brief as follows:

Since it was stipulated by the parties hereto that the horticultural peat moss involved herein is similar in all material respects to the merchandise involved in *Peat Import Corporation*, C. D. 319, *supra*, we, therefore, respectfully refer this court to the Government's brief filed in that case without further comment.

An examination of the brief in the incorporated case fails to disclose any reason to depart from the finding of the court there made that the horticultural peat moss is properly free of duty under paragraph 1685, as there held.

We therefore have before us the question whether the commodity known as poultry peat moss is dutiable under the *eo nomine* provision for peat moss in paragraph 1548, *supra*, or whether its use at and immediately prior to the dates of importation brings it within the provision in paragraph 1685, *supra*, as a substance used chiefly for fertilizer or as an ingredient in the manufacture of fertilizer.

The following stipulation as to this merchandise was entered into by the litigants:

It is stipulated by counsel that the imported merchandise consists of poultry peat moss, or with similar variations indicating poultry uses in its imported condition, and is chiefly used by poultry farmers as bedding on the floors of chicken houses, to keep the floors clean and to absorb the chicken droppings. That afterwards the imported merchandise with the chicken droppings mixed throughout is chiefly used as a fertilizer by the said poultry farmers or is sold by them to other farmers who use it chiefly as a fertilizer.

It was further agreed that this stipulation was limited to merchandise described on the invoices as "poultry peat moss," with or without other qualifying words.

This stipulation as to the use of the poultry peat moss is not specific as to time. However Mr. Vuyk, the first witness produced on behalf of the plaintiffs, testified that he has seen poultry peat moss used in hen houses many times ever since 1921. His testimony, therefore, covers the use of the commodity at and immediately prior to the period of importation. He stated that after being removed from the hen houses it is used as a fertilizer. His description of the use of the

mixture of peat moss and hen droppings after removal from the hen houses was as follows:

If the farmer uses it for ordinary farming, it is simply thrown out as it is, as it comes out, but when it is put up into bags for sale, it is generally screened, pulverized and put into the bags for sale.

We find no proof in the record as to the respective quantities of the poultry peat moss that is used directly on the land as it comes from the hen houses and that which is screened, pulverized, and packed in bags. Under the plaintiff's theory of the case this would seem to be an important element of proof.

It was further shown by the testimony that as the mixture comes out of the hen houses it has a different appearance from the peat moss that is placed in the hen houses in that it is darker in color, has different characteristics, and is higher in nitrogen and in phosphoric acid; that it is generally sold as peat moss chicken manure.

The question for the court's determination is whether this commodity is a grade of a substance used chiefly as an ingredient in the manufacture of fertilizers. It is contended by the plaintiffs in their brief that while the process of manipulation is comparatively simple, it comes clearly within the various definitions laid down by the court for a manufactured article. In support of this claim they cite the early case of *Hartranft* v. *Wiegmann*, 121 U. S. 609, 30 L. ed. 1012. That case held:

\* \* \*. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws.

It would seem that the holding in the *Hartranft* case, *supra*, is not authority for plaintiff's contention.

The Government contends that the original poultry peat moss was never subjected to any manufacturing process. In answer to this contention the plaintiffs in a reply brief state:

It can hardly be supposed that a workman would be called upon to unbale and scatter over the floors of chicken houses several tons of imported poultry peat moss, would hardly regard such exercise as being in the nature of recreation or amusement, nor would he likely regard the removal of such material, after it had been saturated with chicken droppings, in the nature of light entertainment. It is equally likely that the workman would not regard the screening, pulverizing and packing of this saturated material as anything other than labor.

The holding in the case of *Frazee* v. *Moffitt*, 20 Blatchf. 267, sustains the Government's contention. There hay pressed into bales, ready for market, was held not to be a manufactured article, though labor had been bestowed in cutting and drying the grass and baling the hay. Plaintiffs' argument as set forth above might be applied to that situation with equal force. Nevertheless it was the opinion of the court that the hay there involved was not a manufactured article.

However that may be, it has been agreed that the poultry peat moss as imported is "chiefly used by poultry farmers as bedding on the floors of chicken houses, to keep the floors clean and to absorb the chicken droppings." It appears from the testimony that as a result of this chief use the peat moss becomes an ingredient in a fertilizer The importers having agreed that the chief use of the peat moss is as bedding in chicken houses, proof that after having served its chief use, it becomes an ingredient in a fertilizer, cannot serve to alter that agreement. The only conclusion that can be arrived at under such circumstances is that the use of the commodity as an ingredient in a fertilizer must be a secondary use. There cannot be two chief uses.

We therefore find that the plaintiffs have failed to sustain the burden of proof on the question of chief use necessary to permit free entry under paragraph 1685, *supra*, as to the poultry peat moss.

Judgment will be rendered sustaining plaintiffs' claim as to the horticultural or garden peat moss in all of the protests except protest 18664–K, and overruling it as to all other merchandise. Protest 18664–K is dismissed as untimely.