BEFORE THE FIRST DIVISION, JULY 20, 1945

**No. 50357.**—Protests 103339–K, etc., of Pacific National Bank et al. (San Francisco).

OLIVER, Presiding Judge: These suits relate to certain importations, originating in Tahiti, of what are described on the invoices as "temporarily strung shell leis," "strings pikaki, temporarily strung, white, 72-inch," or "strings bubble shell, white, temporarily strung." The collector assessed duty thereon at the rate of 35 percent ad valorem under the provisions of paragraph 1538, Tariff Act of 1930, which reads so far as pertinent, as follows:

* * * manufactures of * * * shell, or of which * * * [shell] * * * is the component material of chief value, not specially provided for; and shells * * * engraved, cut, ornamented, or otherwise manufactured * * *.

Plaintiffs rely upon the claim made in each of the protests for free entry under the provisions of paragraph 1738 of the same act which, so far as pertinent, reads as follows:

* * * shells, not sawed, cut, flaked, polished, or otherwise manufactured, or advanced in value from the natural state.

There are nine exhibits before us, all of which consist of numerous small shells strung on thread or cord which is tied at the ends. Exhibits 1 to 8, inclusive, were identified as being representative of the merchandise imported, and illustrative exhibit 9 was offered as illustrative of the natural color of exhibit 2, which had been subjected to a bleaching process.

Only four varieties of shells are involved, the Tahitian names of three of them being poumotu, pikaki, and huahine. The Tahitian name of the fourth is, as plaintiff's witness Bergman put it, "hard to masticate" in English, and was called by her "bubble shell," from its appearance. The pikaki is a land snail shell; the others are sea or beach shells.

The shells represented by exhibits 1, 3, 4, 5, 6, and 7 were brought to their imported condition in the following manner: The live snails were gathered by the natives from coconut palms and the other mollusks from the beach. They were buried in the sand for 2 or 3 weeks, during which time ants ate the bodies. They were then dug up, washed, and dried. The shells are quite fragile and may be easily punctured by a needle. By this means they were strung on strings 72 inches long, for which purpose, witness Bergman said, thread of gauges from No. 70 to No. 90 is used by the natives. Such thread, she said, is very fine and not strong, and its use resulted in difficulty in shipping the merchandise to the United States intact. She testified, however, that the natives insisted on using it. The 72-inch length was used, according to the witness, as a unit of measure in marketing the shells.

The shells represented by exhibits 2 and 8 were subjected to additional processes after being washed and before being strung. This consisted in heating them in a pan for 4 or 5 minutes, stirring them meanwhile, which resulted in their losing the natural color and turning gray. They were then left out in the sun and dew, which bleached them white.

In *Schoenemann* v. *United States,* 119 F. 584, it was held that shells from which the marine animal had been taken and which were then cleaned were entitled to free entry under a provision of the free list of the Tariff Act of 1897 (par. 635) which is in all material respects identical with paragraph 1738, Tariff Act of 1930. The only real difference between the shells in the *Schoenemann* case and those at bar, which were not bleached, is that the latter have been strung in the manner already described.

It is clear that such stringing was of a temporary nature, and done simply to make the market unit, and, no doubt, was intended also for facility in handling and transportation, although, as has been noted, plaintiff's witness testified that by reason of the fineness of the thread used, and its lack of strength, the strings were subject to breakage in transit. We are satisfied that under these circumstances no new name, character, or use was conferred upon the shells by the stringing such as would bring them within the scope of the term "manufactures of shell," and, indeed, it is probable that such was not the intended classification of the collector, for the advisory classifications of the appraiser is as "shells, manufactured," according to the notations on the invoices.

In the brief filed on behalf of the plaintiffs there are cited *Lackawanna Steel Co.* v. *United States*, 10 Ct. Cust. Appls. 93, T. D. 38359; *Cone* v. *United States*, 14 id. 133, T. D. 41672; *American Push Broom & Brush Co.* v. *United States*, 25 C. C. P. A. 248, T. D. 49391; *United States* v. *Citroen*, 223 U. S. 407; *United States* v. *Wilson*, 28 Fed. Cas. 724, and *Frazee* v. *Moffitt*, 18 F. 584, as cases where operations performed for the purpose of putting a natural product in a marketable state or for convenience in facilitating transportation were not considered to be manufacturing operations which would take articles, otherwise in their natural state, out of the category of unmanufactured articles.

We are of the opinion that these cases amply support the plaintiff's contention with respect to the merchandise which had been cleaned and strung, namely the merchandise represented by exhibits 1, 3, 4, 5, 6, and 7. However, it will be remembered that the merchandise represented by exhibits 2 and 8 had had additional processes of heating and bleaching by the action of sun and dew performed on them.

In connection with the question of whether such operations constituted manufacturing operations or advanced the shells in value within the meaning of the language in paragraph 1738 reading:

\* \* \* shells not sawed, cut, flaked, polished, or otherwise manufactured, or advanced in value from the natural state.

Plaintiffs cite the *Schoenemann* case, where, referring to language found in paragraph 635, Tariff Act of 1897, in all material respects identical with that in paragraph 1738, the Circuit Court of Appeals for the Third Circuit said:

\* \* \* Furthermore, we think that the words "or advanced in value from the natural state," must be read with "or otherwise manufactured," not disjunctively, but so as to join the general concept of the latter phrase with that of the former.

It is pointed out by the plaintiff that the invoice values of the bleached and unbleached shells were the same; hence the bleaching operation caused no advancement in value in the merchandise represented by exhibits 2 and 8 over their unbleached, or natural, counterparts.

More than 40 years have passed since the Circuit Court of Appeals construed. as above the phrases with which we are here concerned, and in successive tariff acts the material language has not been changed. Under that authority, therefore, we hold that the bleaching process, the addition of which did not reflect a change in the value of the merchandise represented by exhibits 2 and 8, did not amount to an operation which would make these shells classifiable as "manufactured" within the meaning of the tariff law.

For the foregoing reasons the claim in each of the protests for free entry of the shells under paragraph 1738 is sustained, and judgment will be rendered accordingly.