(C. D. 1086)

COLONIAL BEAD CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 26, 1948)

*John D. Rode* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

MOLLISON, Judge: The plaintiff in this case imported into the port of New York certain merchandise described on the invoice as "shell strands" which was assessed with duty at the rate of 35 per centum ad valorem by the collector of customs under the provision in paragraph 1538 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1538) for—

* * * shells and pieces of shells engraved, cut, ornamented, or otherwise manufactured * * *.

Plaintiff claims the shells involved to be entitled to free entry under the provision in paragraph 1738 of the same act (19 U. S. C. 1940 ed. § 1201, par. 1738) for—

* * * shells, not sawed, cut, flaked, polished, or otherwise manufactured, or advanced in value from the natural state.

A sample of the imported merchandise is before us as exhibit 1. It consists of small shells which have been pierced and strung close together on a piece of ordinary cotton string about 30 inches long. The president of the importing corporation, testifying from personal observation at the place of business of the exporter, said that after being gathered, the shells are cleaned by being immersed in a chemical solution which also kills or removes any living matter that may be in them. They are then punched, presumably with an awl or needle as the holes are jagged and not uniform, and strung on strings, after which some are dipped in a dye solution to color them, while others are not, being left in their natural color. According to the witness, there is no price differential between the dyed shells and the natural shells. The stringing, he said, serves as a convenient means of purchasing the shells by linear measurement.

Witnesses for the defendant established that the same kind of shells may be purchased loose and unpunched, in which case they are sold by avoirdupois or volume measurements, and that the punched and strung shells cost more, on the basis of the number of shells received, than the loose and unpunched shells.

It appears that shells imported in the manner of the strands at bar are invariably removed from the strings after importation and if intended to be used in the making of necklaces, ornaments, etc., are restrung or sewed to other material, as the case may be, for which purposes the holes made on the original stringing are used. It likewise appears that the loose and unpunched shells are used in the manufacture of novelties and costume jewelry by pasting, and that in such use the punched hole as found in the strung shells is not necessary, and, in fact, is a disadvantage.

Although there is no testimony on the point, it seems obvious that since the same kind of shells may be purchased either punched or

unpunched, intended use would determine whether the former or the latter type of shells would be purchased.

There is no dispute that the shells in issue are not engraved, cut, ornamented, sawed, flaked, or polished, and if they have been "otherwise manufactured, or advanced in value from the natural state" it is because of the punching of the hole, and, in some cases, the dyeing.

At the trial of the issue there was incorporated over the objection of counsel for the defendant the record in the case of *Pacific National Bank* v. *United States*, the decision in which is reported in Abstract 50357, 15 Cust. Ct. 237. While that case, as this, involved shells pierced and temporarily strung, it clearly appeared that that was the only form in which the small, thin, fragile shells there involved could be purchased commercially; that is to say, they were never sold in the loose, unpierced form. We concluded from the evidence in that case that the stringing was done simply to put a natural product in a marketable state and for facility in handling and transportation, and held that under the well-established rule such operations "were not considered to be manufacturing operations which would take articles, otherwise in their natural state, out of the category of unmanufactured articles."

A somewhat different situation appears in the case at bar. The evidence here shows that the shells involved, which, incidentally, are much hardier than those involved in the cited and incorporated case, may be purchased either loose and unpierced, or pierced and strung, and that the latter cost more than the former. Although the amount of the difference in cost was not revealed, it would be logical that the cost of handling each individual shell involved in the piercing and stringing operations would be substantial.

However, we do not think that these facts require a decision different from that which was made in the *Pacific National Bank* case. The basic question at issue is, have the shells at bar been manufactured or advanced in value from the natural state by reason of the punching, and, in some cases, the dyeing operations? So far as the punching operation is concerned, while the record shows that punched and strung shells cost more than loose, unpunched shells, it also shows that such shells as a commercial product were offered in both forms.

The situation is analogous to that which obtained in the case of *United States* v. *Citroen*, 223 U. S. 407, 56 L. ed. 486. That case involved pearls which had been drilled or pierced but not strung or set, and the question was whether they were classifiable for duty purposes under a tariff provision for "pearls in their natural state, not strung or set." In holding the pierced pearls to be embraced within the said language, the Supreme Court, speaking through Chief Justice Hughes, said:

* * *   As was pointed out by the Board of General Appraisers: "Pearls just as they come from the shell are, strictly speaking, only such as are in their natural state." But the statute deals with the pearls of commerce. It appears that over seventy-five per cent of all large pearls when they first come into the hands of wholesale dealers are drilled, usually in a somewhat primitive manner, by the pearl fishers. It cannot be supposed that Congress contemplated such a disregard of the facts of trade, and such a radical departure from the policy of former tariff legislation, as would be involved in a construction of paragraph 436 [of the Tariff Act of 1897] which would exclude drilled pearls.

We conclude, therefore, that even though the punching operation may have added to their value, it did not take the shells in issue out of the natural state, and hence did not advance them in value *from* the natural state, within the meaning of those words as used in the tariff provision. Nor do we believe that the punching "otherwise manufactured" the said shells. In *Schoenemann* v. *United States*, 119 Fed. 584, the Circuit Court of Appeals, Third Circuit, said, referring to language found in the 1897 Tariff Act which is identical with that found in paragraph 1738 of the present act:

* * *   Furthermore, we think that the words "or advanced in value from the natural state," must be read with "or otherwise manufactured," not disjunctively, but so as to join the general concept of the latter phrase with that of the former.

In this view, it could scarcely be urged that shells which were still in their natural state were "otherwise manufactured." See also in this connection the case of *American Bead Co.* v. *United States*, 10 Treas. Dec. 28, T. D. 26585, wherein it was held by this court that the punching of a hole in small shells for stringing purposes was not a process of cutting or manufacture.

Finally, we note that counsel for the defendant does not urge that the punching of the hole in each shell constituted a manufacture, as is evident by the following colloquy between the presiding judge and counsel:

Presiding Judge OLIVER: * * * Is it the Government's position that this punching operation is a manufacturing operation and takes the beads out of the natural state?

Mr. FITZGIBBON: I won't go that far. The Government's position is that the punching and stringing of the beads takes them out of their natural state and advances them in value. Therefore it takes them out of the free provision in paragraph 1738.

Presiding Judge OLIVER: In other words, the basis of your position is that it is advanced in value and it is not a question of manufacture; is that right?

Mr. FITZGIBBON: That is quite right. (R. p. 49.)

There remains to be considered only whether the dyeing operation performed on certain of the shell strands constituted a manufacture which would take the shells at bar out of the purview of paragraph 1738. It has been heretofore noted that there was no difference in price between the dyed and undyed strands. We regard the dyeing as akin to the bleaching process performed on certain of the shells

in the *Pacific National Bank* case, *supra*, which likewise did not affect the value of the shells. Citing the *Schoenemann* case, *supra*, we there said:

More than 40 years have passed since the Circuit Court of Appeals construed as above the phrases with which we are here concerned, and in successive tariff acts the material language has not been changed. Under that authority, therefore, we hold that the bleaching process, the addition of which did not reflect a change in the value of the merchandise represented by exhibits 2 and 8, did not amount to an operation which would make these shells classifiable as "manufactured" within the meaning of the tariff law.

For these reasons we sustain the protest claim for free entry of the shells in question under the provisions of paragraph 1738 of the Tariff Act of 1930. Judgment will issue accordingly.