UNITED STATES *v.* COLONIAL BEAD CO., INC. (No. 4593)[1]

[1] C. A. D. 401.

United States Court of Customs and Patent Appeals, February 1, 1949

*David N. Edelstein,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

*John D. Rode* for appellee.

[Oral argument December 9, 1948, by Mr. Weeks and Mr. Rode]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, pursuant to its decision, C. D. 1086, sustaining a protest of appellee claiming certain shell strands to be entitled to free entry under paragraph 1738 of the Tariff Act of 1930, rather than dutiable under paragraph 1538 of that act, as classified by the collector. The involved paragraphs read as follows:

PAR. 1738. Pearl, mother of, and shells, not sawed, cut, flaked, polished, or otherwise manufactured, or advanced in value from the natural state.

PAR. 1538. Manufactures of ivory or vegetable ivory, or of which either of these substances is the component material of chief value, not specially provided for; manufactures of mother-of-pearl or shell, or of which these substances or either of them is the component material of chief value, not specially provided for; and shells and pieces of shells engraved, cut, ornamented, or otherwise manufactured, 35 per centum ad valorem.

It appears that appellee imported at the port of New York from Nassau, British West Indies, a quantity of small sharply pointed marine shells ranging in length from about ¼ inch to about ¾ of an inch. The shells after having been gathered were immersed in a chemical solution which cleanses the shells, destroying any living matter that may be in them. They have rough holes near their open ends and were strung on pieces of ordinary cotton string. A sample of the involved imported merchandise about 30 inches long is an exhibit in

the case. The holes were punched with an awl or needle. Some of the shells were dyed, while the others are in a kind of ivory white natural color. There is no difference in price between the dyed shells and the others, and it is said that the shells are strung so that they may be sold by linear measurement. It appears that the same kind of shells may be purchased in bulk and unpunched, and are sold by weight or volume. They are used in manufacturing novelties and costume jewelry by pasting. The punched and strung shells cost more for the same quantity than the others. The strings are always removed from the shells after importation. When used in the making of necklaces, ornaments, and the like, they are restrung or sewed to a base, use being made of the punched holes.

It is agreed that the involved shells are not "engraved, cut, [or] ornamented" as provided for in paragraph 1538, nor are they "sawed, cut, flaked, [or] polished" as provided in paragraph 1738. Therefore, it is clear that if the shells have been "otherwise manufactured, or advanced in value from the natural state" it is by reason of the punching of the holes and stringing of the shells, and with respect to the colored shells, the dyeing of them.

During the trial, the record in the case of *Pacific National Bank* v. *United States*, 15 Cust. Ct. 237, Abstract 50357, was incorporated over the objection by the Government in the present record. In that case, the involved merchandise consisted of small fragile marine shells, pierced and temporarily strung, imported from Tahiti. It appears that such strung shells were the only form in which those kind of shells could be purchased commercially. The court held in that case that the stringing of the shells was simply to put a natural product in a marketable state, and therefore piercing and stringing were not considered to be manufacturing operations which would take them out of the category of unmanufactured articles or to advance them in value from their natural state. From that decision, the Government did not appeal.

It is apparent that the goods involved in the *Pacific National Bank* case, *supra*, are much more delicate than those here involved, and further that they were never purchased either loose or unpierced.

There is nothing in the present record showing the difference in cost between the involved shells and those which may be imported in an unpierced and loose condition, but since it took labor to punch and string the shells, it would seem reasonable to suppose that the strung shells would cost more than the others.

The only question to be determined here is whether or not the imported merchandise has been manufactured or advanced in value from the natural state by the hereinbefore set out operations.

In its decision, the trial court likened the situation in this case to that which appeared in the case of *United States* v. *Citroen*, 223 U. S.

407. In that case pearls, which were matched so as to form a collection suitable for stringing and which were drilled in a somewhat primitive manner by the pearl fishers, but were not strung or set, were imported. The question was whether or not the pearls were properly classifiable for duty by similitude under paragraph 434 of the tariff act of 1897 "as pearls set or strung, or jewelry" dutiable at 60 per cent ad valorem. The Board of General Appraisers (now the United States Customs Court) sustained the importer's protest, holding the pearls to be dutiable by similitude at 10 per cent under paragraph 436 of that act. The circuit court on additional testimony reversed the ruling of the board and affirmed the classification of the collector. That decision was reversed by the circuit court of appeals which held that the decision of the board was right. The Supreme Court held that the involved merchandise was properly classifiable as pearls in their natural state and was dutiable under paragraph 436 as such. In that case, however, it appeared that more than seventy-five percent of all large pearls were drilled, and that as the statute dealt with pearls of commerce, it could not be supposed that Congress disregarded such fact to the extent that the construction of paragraph 436 would exclude drilled pearls. The difference between that case and this is that it does not appear in the record here what percentage of shells, such as are here involved, are strung, so that the exact reasoning in the *Citroen* case, *supra*, does not entirely fit the present situation. But the holding of the Supreme Court was that pierced pearls were pearls in their natural state, and to that extent it is somewhat analogous to the facts before us.

We agree with the reasoning of the trial court as far as this case is concerned that the punching, stringing, or dyeing operation does not in a tariff sense advance the shells in value from the natural state.

In the case of *Schoenemann* v. *United States*, 119 Fed. 584 (C. C. A. 3rd 1903) certain shells were imported from which the animal matter had been removed and the shells cleansed by immersion in a tub containing chloride of lime and then washed with clean water so that all objectionable matter had been removed. The shells were classified by the collector as dutiable at 35 per centum ad valorem, as having been advanced in value from their natural state, under the provision of paragraph 450 of the tariff act of 1897. The appellant claimed the merchandise to be free of duty under paragraph 635 of that act which is identical with paragraph 1738 of the present act. The circuit court of appeals reversed the holding of the Circuit Court of the United States for the Eastern District of Pennsylvania and held that the shells in question should have been classified, as claimed by the appellant, and in that connection stated as follows:

Furthermore, we think that the words "or advanced in value from the natural state" must be read with "or otherwise manufactured," not disjunctively, but so as to join the general concept of the latter phrase with that of the former.

In the case of *American Bead Company* v. *United States*, 10 Treas. Dec. 28, T. D. 26585, decided July 14, 1905, it was held as follows:

The merchandise in this case consists of diminutive shells each one being crudely pierced with a single hole for stringing purposes.

The appraiser, in a special report to the collector, states that the shells have been polished, but the examiner, at the hearing before the Board, testified that the polishing referred to was done in an acid bath in the process of cleaning and not by abrasion.

Except for the holes pierced therein, these shells would seem to be identical with those covered by decision of the circuit court of appeals for the second circuit in the case of Schoeneman *v.* United States (119 Fed. Rep., 584), and we do not regard the punching of a hole—probably with an awl—in each shell as a process of cutting or manufacture sufficient to differentiate them from the shells passed upon in the Schoeneman case (*supra*), and on the authority of the judicial decision in that case, we sustain the claim in the protest that the merchandise is entitled to free entry under paragraph 635 of the tariff act of 1897.

The collector's decision in assessing duty on said merchandise at 35 per cent ad valorem under paragraph 450 is reversed.

Both of those decisions were specifically called to the attention of the Congress as appears in the Notes on Tariff Revision Prepared For The Use of the Committee on Ways and Means, House of Representatives, 1908, at page 768. Congress, however, did not see fit to change the language in paragraph 635 of the tariff act of 1897 and it has remained the same since then in the various tariff acts, including the present one. That, therefore, in our opinion, constitutes legislative approval of judicial interpretation.

Furthermore, during the course of the trial of this case, counsel for the Government in answer to a question from the bench asking if the Government contended that the punching of the shells is a manufacturing operation which advances the merchandise in value from its natural state, said that he would "not go that far," but it was the position of the Government that the stringing and punching advanced the merchandise from its natural state, and therefore removed it from the free paragraph. Apparently counsel for the Government conceded that the punching of the shells did not advance them in value from the natural state. Therefore, we must conclude, in accordance with his statement, that the mere stringing of the shells was sufficient to render the merchandise properly dutiable. Such conclusion, in our opinion, as far as this case is concerned, would be absurd.

Since the dyeing of some of the shells does not give them any difference in value from the undyed shells, the dyed shells must be considered in the same light as similar shells not dyed.

We can find no error in the judgment appealed from, and therefore it is hereby *affirmed*.