**No. 53093.**—Thomson Trading Co. *v.* United States, protest 107732–K (Los Angeles).

MOLLISON, Judge: This case involves the classification status of various small shells imported into the United States from Tahiti. As imported, the shells had been pierced by a needle and strung on fine thread, 72 inches in length, the ends being tied together. They were assessed with duty at the rate of 35 per centum

ad valorem under the provisions of paragraph 1538 of the Tariff Act of 1930. That paragraph contains two provisions with respect to shells, viz:

\* \* \* manufactures of \* \* \* shell \* \* \* not specially provided for \* \* \*

and—

\* \* \* shells and pieces of shells engraved, cut, ornamented, or otherwise manufactured,

both at the same rate, 35 per centum ad valorem. We note that the appraiser's advisory return was as "mfrs. shell," but there is nothing to show under which provision the collector classified the articles.

The protest claim is for free entry under the provision in paragraph 1738 of the same act for—

\* \* \* shells, not sawed, cut, flaked, polished, or otherwise manufactured, or advanced in value from the natural state.

There are a number of different kinds of shells involved, which, for ease in reference, can be divided into two groups according to the treatment given them prior to importation.

In the first group are those shells which, after gathering, are buried in the sand to allow insects to eat away the tissues, leaving the shells. These are then dug up, washed in soapy water containing some Clorox, and then strung.

The shells in the second group receive the same treatment as to gathering, burial in the sand, digging up, and washing, but are then heated in a pan until they lose their color and become an off-shade of white, after which they are bleached by additional washings and by leaving them out in the sun and dew until the desired whiteness is obtained.

Whether the shells are bleached or natural, they are pierced by a needle and strung on very fine thread measuring 72 inches in length. It appears that the stringing on threads of this length is for the purpose of achieving a standard unit of commerce and for ease of inspection and handling. Because of the frailty of the thread there is frequent breakage in transit, but, in any event, the shells are removed from the thread after importation and either restrung on stronger strings and clasps added, or used in the manufacture of jewelry, ornaments, and novelty items by pasting or gluing them to pins, clasps, combs, etc.

The issue presented is not new, as a virtually identical factual and legal situation was involved in the case of *Pacific National Bank* v. *United States*, 15 Cust. Ct. 237, Abstract 50357. In that case we held that the cleansing, piercing, and stringing of the shells were not manufacturing operations such as would take the shells out of the category of those provided for in paragraph 1738 as "not \* \* \* manufactured, or advanced in value from the natural state," but were merely operations performed for the purpose of putting a natural product in a marketable state or for convenience in facilitating transportation. As to those shells which had been bleached, we held that since the values of the bleached and unbleached shells were the same, it was obvious that the bleaching had not advanced the bleached shells in value, and under the interpretation of the statutory language "otherwise manufactured, or advanced in value from the natural state" found in *Schoenemann* v. *United States*, 119 F. 584, viz:

\* \* \* Furthermore, we think that the words "or advanced in value from the natural state," must be read with "or otherwise manufactured," not disjunctively, but so as to join the general concept of the latter phrase with that of the former,

the bleaching was not such an operation as would make the shells classifiable as "manufactured" within the meaning of the tariff law.

Counsel for the defendant in this case has cited a number of cases, most of them admittedly distinguishable on their facts or upon the law applicable, and relies principally upon the decision of the United States District Court, District of Hawaii, in the case of *United States* v. *Hawaii and South Seas Curio Company*, reported in 10 Treas. Dec. 407, T. D. 26778. In that case, which was on appeal from a decision of the Board of United States General Appraisers, the District Court stated that—

The main question in this case is whether or not the imported articles in question are "commonly known as jewelry,"

the competition being between the provision in the Tariff Act of 1897 for "Articles commonly known as jewelry" (paragraph 434) and the provision for "shells, engraved, cut, ornamented, or otherwise manufactured" (paragraph 450). The decision of the board was made upon an inspection of samples, without the introduction of testimonial evidence. On the question of the state of the shells, the board's opinion, reported in *Hawaii and South Seas Curio Company et al.* v. *United States*, 8 Treas. Dec. 404, T. D. 25663, says:

The shells in question, having been pierced or cut, would seem to be included within the terms of paragraph 450,

and the District Court, on the same subject, said:

It has been a serious question with me whether the strung shells in question should not be classified under paragraph 635 and allowed to be entered free of duty, as it requires a somewhat liberal interpretation of the word "manufacture" to include them as "shells engraved, cut, ornamented, or otherwise manufactured," according to paragraph 450, these shells being merely mechanically pierced with a small hole and then strung on a cotton cord of no value otherwise than its use as mechanically holding the shells in a string, and having no metal clasp or fastening of any kind. The description of paragraph 635, "shells, not sawed, cut, polished or otherwise manufactured," would include these shells were it not for the additional sentence, "or advanced in value from the natural state." Undoubtedly the boring of the holes, which has to be carefully and skillfully done because of the fragile nature of the shells; and the stringing of them, does advance their value from what it would be in the natural state, and therefore takes it out of the description of that paragraph.

In the case at bar we are not left, as were the Board of United States General Appraisers and the District Court in the cited case, to conjecture from an inspection of a sample; there is direct, uncontradicted testimonial evidence as to the nature and purpose of the piercing and stringing of the shells, i. e., to place them in a marketable state. Under the circumstances, we do not consider the cited case to be controlling of the issue here.

More in point, we believe, is the recent decision of our appellate court in the case of *United States* v. *Colonial Bead Co., Inc.*, 36 C. C. P. A. 78; C. A. D. 401, wherein it was held that the punching, stringing, and dyeing of small sea shells, not unlike those at bar, did not in a tariff sense advance the shells in value from the natural state or constitute manufacturing operations.

In its decision the Court of Customs and Patent Appeals pointed out that the decision in *Schoenemann* v. *United States, supra*, and the decision in *American Bead Company* v. *United States*, 10 Treas. Dec. 28, T. D. 26585, of like import, were specifically called to the attention of the Congress at the time the bill which ultimately became the Tariff Act of 1909 was under consideration by that body, and that Congress retained in the 1909 act and in succeeding acts, including the present tariff act, the language which had been construed in those cases as hereinbefore set forth. This action on the part of Congress, in the opinion of the court, constituted legislative approval of judicial interpretation.

For the reasons given above, the protest claim for free entry under paragraph 1738 of the Tariff Act of 1930 is sustained, and judgment will issue accordingly.