(C. D. 1493)

Puerto Rican Handcrafts v. United States

## United States Customs Court, First Division

(Decided January 23, 1953)

*John D. Rode* for the plaintiff.

*Charles J. Wagner,* Acting Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon,* special attorneys), for the defendant.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: This case relates to certain shell strands which were assessed with duty at rates equivalent to 55 per centum ad valorem, as unfinished jewelry, under paragraph 1527 (a) (2) of the Tariff Act of 1930, as modified by the trade agreement with Mexico, T. D. 50797. Plaintiff claims that the merchandise is free of duty under paragraph 1738, as shells, not manufactured or advanced in value from the natural state.

The paragraphs involved herein, so far as pertinent to the present issue, read as follows:

Paragraph 1527 (a) (2) of the Tariff Act of 1930, as modified by the trade agreement with Mexico, T. D. 50797:

Jewelry, commonly or commercially so known, finished or unfinished (including parts thereof), of whatever material composed (except jewelry composed wholly or in chief value of gold or platinum, or of which the metal part is wholly or in chief value of gold or platinum):

Valued above 20 cents but not above $5 per dozen pieces, ½¢ each plus ³⁄₁₀¢ per doz. for each 1¢ the value exceeds 20¢ per doz., and 25% ad valorem.

Paragraph 1738 of the Tariff Act of 1930:

Pearl, mother of, and shells, not sawed, cut, flaked, polished, or otherwise manufactured, or advanced in value from the natural state.

The shell strands in question are substantially the same as the merchandise which was the subject of the decision in *United States* v. *Colonial Bead Co., Inc.,* 36 C. C. P. A. (Customs) 78, C. A. D. 401, the record in which case was incorporated herein on motion by plaintiff and without objection from defendant. In that case, the articles were classified under paragraph 1538 of the Tariff Act of 1930 which reads as follows:

Manufactures of ivory or vegetable ivory, or of which either of these substances is the component material of chief value, not specially provided for; manufactures of mother-of-pearl or shell, or of which these substances or either of them is the component material of chief value, not specially provided for; and shells and pieces of shells engraved, cut, ornamented, or otherwise manufactured, 35 per centum ad valorem.

The importer there claimed free entry under paragraph 1738, *supra*. The appellate court, in its decision in that case, set forth the facts as follows:

It appears that appellee imported at the port of New York from Nassau, British West Indies, a quantity of small sharply pointed marine shells ranging in length from about ¼ inch to about ¾ of an inch. The shells after having been gathered were immersed in a chemical solution which cleanses the shells, destroying any living matter that may be in them. They have rough holes near their open ends and were strung on pieces of ordinary cotton string. A sample of the involved imported merchandise about 30 inches long is an exhibit in the case. The holes were punched with an awl or needle. Some of the shells were dyed, while the others are in a kind of ivory white natural color. There is no difference in price between the dyed shells and the others, and it is said that the shells are strung so that they may be sold by linear measurement. It appears that the same kind of shells may be purchased in bulk and unpunched, and are sold by weight or volume. They are used in manufacturing novelties and costume jewelry by pasting. The punched and strung shells cost more for the same quantity than the others. The strings are always removed from the shells after importation. When used in the making of necklaces, ornaments, and the like, they are restrung or sewed to a base, use being made of the punched holes.

In addition to the foregoing established facts, there was also an agreement between the parties in the cited case that "the involved shells are not 'engraved, cut [or] ornamented' as provided for in paragraph 1538, nor are they 'sawed, cut, flaked, [or] polished' as provided in paragraph 1738." Thus, the court expressed the issue before it as follows:

* * * Therefore, it is clear that if the shells have been "otherwise manufactured, or advanced in value from the natural state" it is by reason of the punching of the holes and stringing of the shells, and with respect to the colored shells, the dyeing of them.

In upholding the importer's claim and holding the merchandise to be free of duty under paragraph 1738, the court, speaking through Jackson, J., said: "We agree with the reasoning of the trial court as far as this case is concerned that the punching, stringing, or dyeing operation does not in a tariff sense advance the shells in value from the natural state."

Included in the record in the *Colonial Bead Co., Inc.*, case, *supra*, was the record in the case of *Pacific National Bank* v. *United States*, 15 Cust. Ct. 237, Abstract 50357. There, the merchandise consisted of four varieties of Tahitian shells. The collector's assessment and the importer's claim were the same as those involved in the *Colonial Bead Co., Inc.*, case. In our decision in the *Pacific National Bank* case, we described the articles there under consideration as follows:

The shells represented by exhibits 1, 3, 4, 5, 6, and 7 were brought to their imported condition in the following manner: The live snails were gathered by the natives from coconut palms and the other mollusks from the beach. They were buried in the sand for 2 or 3 weeks, during which time ants ate the bodies.

They were then dug up, washed, and dried. The shells are quite fragile and may be easily punctured by a needle. By this means they were strung on strings 72 inches long, for which purpose, witness Bergman said, thread of gauges from No. 70 to No. 90 is used by the natives. Such thread, she said, is very fine and not strong, and its use resulted in difficulty in shipping the merchandise to the United States intact. She testified, however, that the natives insisted on using it. The 72-inch length was used, according to the witness, as a unit of measure in marketing the shells.

The shells represented by exhibits 2 and 8 were subjected to additional processes after being washed and before being strung. This consisted in heating them in a pan for 4 or 5 minutes, stirring them meanwhile, which resulted in their losing the natural color and turning gray. They were then left out in the sun and dew, which bleached them white.

In determining the classification of that merchandise, we said:

It is clear that such stringing was of a temporary nature, and done simply to make the market unit, and, no doubt, was intended also for facility in handling and transportation, although, as has been noted, plaintiff's witness testified that by reason of the fineness of the thread used, and its lack of strength, the strings were subject to breakage in transit. We are satisfied that under these circumstances no new name, character, or use was conferred upon the shells by the stringing such as would bring them within the scope of the term "manufactures of shell," and, indeed, it is probable that such was not the intended classification of the collector, for the advisory classifications of the appraiser is as "shells, manufactured," according to the notations on the invoices.

We held that the merchandise had not been removed from the category of unmanufactured articles. With respect to the bleaching operation, we found that the process "caused no advancement in value in the merchandise." All of the merchandise was held to be free of duty under paragraph 1738.

Supplementing the proof in the incorporated records, plaintiff herein introduced additional evidence consisting of samples of the articles in question and oral testimony of one witness. Defendant offered the testimony of two witnesses in this case.

Although the official sample (plaintiff's collective exhibit 1) consists of three items, only two are in dispute. Invoice item 5188, described as "plaited seed strands 16″ with pointershell stars, raffia ends, shell stars dyed" (plaintiff's exhibit 1–C), consists of a triple strand, mostly cassia seeds, woven or braided together, strung on thread with raffia ends, and having a bead and loop at the end to serve as a clasp. Plaintiff abandoned its claim as to that item so no further reference will be made thereto.

One of the items in question is described on the invoice as "natural doveshells 36″ temporarily strung" (item 5163). It consists of a strand of white shells, about 36 inches long, and tied with a loose or slip knot (plaintiff's exhibit 1–A). The other item in question is described on the invoice as "spiderconch & dyed mudshell strands 36″ temporarily strung" (item 5111). It consists of a strand of shells,

strung so that there are 20 small green shells separated by 1 large white shell throughout the entire strand, which is approximately 36 inches long and tied with a loose or slip knot (plaintiff's exhibit 1–B).

A partner in the plaintiff company, whose business includes dealing in shells (loose and strung), testified that the merchandise under consideration is never sold in the condition as imported. The string is not usable, and, therefore, the strands are always broken up. The witness' testimony on the point was summed up in this way:

CHIEF JUDGE OLIVER: Before Government counsel talks to you, do I understand correctly that it is your testimony that both Exhibit 1–A and Exhibit 1–B were taken apart by you after you got it here and remade into a different type of article for sale?

THE WITNESS: Yes.

CHIEF JUDGE OLIVER: Is that right?

THE WITNESS: Yes, that's quite right.

CHIEF JUDGE OLIVER: That is, they were never sold by you to be used in the strung condition, either with new string or old string, with or without clasps, in the length and circular condition in which it now appears?

THE WITNESS: No, never.

The witness further testified that sometimes the imported shells are redyed or repainted before being restrung and that in restringing the articles, different designs are used for the various purposes intended. The witness, herself, restrung the shells for their ultimate use as hat bands, belts, shoulder straps on evening gowns, and floral decorations or so-called "peps," which are little imitation fruits that are added for color and interest.

Much of the cross-examination of the witness was directed toward obtaining an explanation concerning the arrangement of exhibit 1–B, which shows a white shell equidistantly spaced to separate a series of 20 green shells. In this connection, the witness testified that the merchandise was purchased by the pound "so many pounds to so many strings," and the arrangement for a 36-inch string was a matter of packing that enabled the importer to calculate more easily the amount imported. The witness further testified that she supplied the paint or dye for the colored shells and that the cost of those shells in the country of exportation was the same as the shells of natural color.

The customs examiner, whose official duties have included examination and advisory classification of shell strands like those under consideration, testified on behalf of defendant. He stated that he has seen shell strands, in the same condition as the imported merchandise in question, in retail stores "at the counter where other types of necklaces, earrings, and brooches were sold" (R. 49). Although he testified on direct examination that the merchandise which he saw in "Woolworth's, Kresge, [and] Grant Stores," had a thread which

"appeared to be similar" to the present merchandise, the witness admitted on cross-examination that the merchandise which he observed in those retail stores had "secure knots" while the shell strands in question have a slip knot. On further cross-examination, the witness stated that he was unable to tell whether the shell strands that he saw in the stores had been restrung. His testimony was concluded with a statement that the shell strands in question are not dedicated to use as necklaces.

Defendant's second witness is employed as a buyer by Coro, Inc., whose business is the sale of costume and imitation jewelry. He testified that shell strands, like those under consideration, became popular during wartime when other materials were scarce; that prior to 1941, his firm did not import any shells or shell articles; and that his experience with the articles in question was equal to about a year. The witness further testified that the articles in question are necklaces; that his firm sold similar merchandise in its condition as imported; that he has seen "some girls wearing these strands of beads around their necks"; and that he has seen them "in many department stores on jewelry counters" (R. 65). In the course of his cross-examination, the witness admitted that the shell strands which he observed in department stores were fitted with a permanent knot and not with a slip knot like that which appears on the articles in question, and that he could not tell whether or not those shell strands had been restrung from their original condition. The witness' statement that dyed shells are more expensive than those which are undyed was explained as follows (R. 78):

When I did purchase these shells, if I bought nothing but colored shells without the white shells, they would be higher in price, but if we bought both, then they would be basically the same price, average price.

The witness also admitted on cross-examination that the necklaces handled by his firm always had a firm knot on them before being sold.

Government counsel, in their brief, have cited several cases in which the issue was materially different from that now before us. *United States* v. *May Department Stores Co.*, 15 Ct. Cust. Appls. 46, T. D. 42151; *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T. D. 42219; *Theo. L. Stern & Co. (Inc.)* v. *United States*, 20 C. C. P. A. (Customs) 423, T. D. 46260; *H. B. Thomas & Co.* v. *United States*, 47 Treas. Dec. 494, T. D. 40844; and *L. D. Anderson Jewelry Co.* v. *United States*, 31 Treas. Dec. 310, Abstract 40303. In all of those cases, the merchandise involved was concededly necklaces of a particular kind, but in none was the claim made that is presented by plaintiff herein. A brief review of each of the cited cases follows.

In the *May Department Stores Co.* case, *supra*, the court described the imported articles as "rose-colored glass beads, cut, faceted, and perforated, carefully graduated in size from one-half to three-

sixteenths of an inch in diameter and as thus graduated permanently strung on a substantial string which is knotted between each bead and the next one, the entire string of beads, or necklace, being 31 inches in length and not capable of being unfastened or opened." The collector classified the merchandise as jewelry, and the importer claimed classification as beads in imitation of precious stones. In other words, the issue presented was whether the provision for jewelry was more specific than that for beads in imitation of precious stones. The court, recognizing the broad scope of the statutory language, "Jewelry, commonly or commercially so known, finished or unfinished, of whatever material composed," held the necklaces to be classifiable under that provision.

The *Flory & Co.* case, *supra*, related to necklaces composed of black galalith beads and having a clasp which consisted of two beads fastened together by a black screw composed of the same material as the beads. The decision therein was based on the court's finding that the necklaces were "jewelry" within the common acceptation of the term.

In the *Theo. L. Stern & Co. (Inc.)* case, *supra*, the merchandise consisted of necklaces made of glass beads and with a clasp attached. The issue there was the same as that presented in the *May Department Stores Co.* case, which the court followed and held the necklaces to be classifiable as jewelry.

In the *H. B. Thomas & Co.* case, *supra*, the merchandise consisted of ornamental pendants of carved agate, jade, turquoise, or amber, suspended from a silk cord clasped with an ivory clasp. The cord was of necklace length, and in addition to the pendant and clasp there was a small bead on the cord. The articles were classified as jewelry, and the importer claimed the merchandise was "mere materials for the making of jewelry and other articles." The case turned on the finding that the merchandise was a "species of necklace." The collector's classification was therefore upheld.

The decision in the *L. D. Anderson Jewelry Co.* case, *supra*, was based on a rather incomplete record. The merchandise consisted of certain necklaces composed of small, colored, conical-shaped sea shells pierced and strung on cotton cord. In upholding the collector's classification of the articles as jewelry, it was held that the evidence was "not sufficient to warrant a change in the collector's classification."

The cited cases have no application herein primarily because the factual situation now before us is in no way comparable to what was established therein. The articles in question are not necklaces, finished or unfinished. These shell strands are never sold in their imported condition, but are always broken up and converted into different designs for a variety of uses. Defendant's testimony to the effect that the purpose of the slip knot on the present merchandise is

to permit importers "to possibly break these things up to make different items out of it" lends support to plaintiff's proof establishing that the articles in question are never sold in the length and circular condition as shown by exhibits 1–A and 1–B, whether with a new or the old string, or with or without a clasp.

The same issue that is before us in this case was presented in *Capt. J. C. Hillis* and *Thomson Trading Co.* v. *United States*, 26 Cust. Ct. 387, Abstract 55389, which involved certain "pikake" shells strung on threads 72 inches long. There, as here, the articles were classified as jewelry under paragraph 1527 (a) (2), as modified by T. D. 50797, *supra*, and the importers claimed free entry under paragraph 1738, *supra*. In rejecting the collector's classification, we said:

> * * * The shells in question are not used in the condition in which imported. They are not dedicated to the making of a certain definite article of jewelry, nor are they a certain definite article of jewelry in an incomplete or unfinished state. On the other hand, we find that these shells in their imported condition have not been manufactured or advanced in value from their natural state, and hold that they are properly free of duty under paragraph 1738, Tariff Act of 1930, as "* * * shells, not sawed, * * * or otherwise manufactured, or advanced in value from the natural state," as claimed.

In reaching that conclusion, we cited the case of *United States* v. *Wanamaker*, 14 Ct. Cust. Appls. 285, T. D. 41888, in which the imported commodity consisted of rock crystal beads, graduated, faceted, cut, and strung. The appellate court found that the merchandise was—

> * * * not dedicated to the making of a certain definite article of jewelry, "nor is it a certain definite article of jewelry in an incompleted or unfinished state." It was not a necklace in its imported condition and to finish it into a necklace would require more than adding to what has already been done. To finish it into a necklace all of the beads, in the order in which they are now strung, might be used, but the present temporary cord would have to be replaced with a different one.

The court then stated that "under such a statement of facts, the importation could not properly be called unfinished jewelry."

All that was said concerning the merchandise involved in the *Capt. J. C. Hillis* and *Thomson Trading Co.* and *Wanamaker* cases, as hereinabove quoted, has equal application, with the same force and effect, to the shell strands now under consideration. Accordingly, we hold that the articles are not properly classifiable as jewelry, finished or unfinished, under paragraph 1527 (a) (2), as modified, as assessed by the collector.

Since it is agreed between the parties that the articles in question are the same in all material respects as the merchandise which was passed upon in the *Colonial Bead Co., Inc.*, case, *supra*, we therefore follow the decision therein and hold the shell strands described on the invoice as "natural doveshells 36″ temporarily strung" (item 5163),

and "spiderconch & dyed mudshell strands 36″ temporarily strung" (item 5111) to be free of duty under paragraph 1738 of the Tariff Act ·of 1930, as claimed.

To the extent indicated,. that claim in the protest is sustained and judgment will be rendered accordingly.